Jacob Snively, Adm. of Ellen Watkins, *ag't* James H. Beavans and Thomas Beavans, Adms. of Edgar A. Watkins, and others. Distribution of an intestate's estate.

The law prescribes the channel through which the title to an intestate's estate must pass.

A testator devised to his brother, Greenbury Watkins, the whole of the estate which he left to his two sons, in the event of their dying before twenty-one, he paying to testator's wife $1000. This last is a transmissible interest, and will go to the representative of legatee, if she dies before the contingency happens.

A party is liable only in the character in which he is sued.

Snively *vs.* Beavans, *et al.*

THIS case is brought by appeal from the orphans court of Washington county.

It appears by the record, that R. W. Watkins, of Washington county, departed this life in the year 1845, having previously and on the 8th day of April 1845, duly executed his last will and testament, wherein, among other devises, are found, in substance, the following to his wife Ellen:

"First. One-third of his estate, independent of his claims against the Chesapeake and Ohio Canal Company.

Second. One-third of his lands and other claims against the Chesapeake and Ohio Canal Company.

Third. Two hundred dollars, in addition to all former bequests.

Fourth. His gold watch and chain, marked 'E. A. Watkins.'

Fifth. That in the event of the death of his two sons, Thomas Wilson and Edgar Augustine, before they arrived at twenty-one years of age, that the testator's brother, (G. M. Watkins,) should have their whole estate, by paying Ellen, the wife of the testator, one thousand dollars."

It further appears from the proceedings in this cause, that after the death of said testator, Ellen, his widow, departed this life intestate, and that letters of administration upon her personal estate were granted to the appellant, (Jacob Snively,) on the 2nd day of June 1846, by the orphans court of Washington county, who, on the 23rd of August 1848, settled his first account with said court, which is not final, nor has said administrator charged himself in the same, with all or any of the devises to said Ellen, hereinbefore mentioned.

The record further shows, that first, after said Ellen, the son, Thomas Wilson, died, and next, and in the year 1849, Edgar Augustine, the other son, and only remaining child, departed this life, both infants, under twenty-one years of age; that upon the personal estate of said Edgar A., letters of administration were, by the orphans court of said county, granted unto James H. and Thomas Bevans, on the 30th day of August 1849; that the petitioners are the heirs at law of

27       v.1

said Ellen, deceased, and as such with said James H. and Thomas Bevans, administrators as aforesaid, filed the petition in this cause, praying the appellant, as administrator of said Ellen, to charge himself with the aforesaid legacies, and to distribute the one thousand dollars to said petitioners, the brother and sisters, and brothers-in-law of said Ellen, and to distribute and pay over one-half of the residue of said estate to James H. and Thomas Bevans, administrators of Edgar A. Watkins, deceased; which was granted by said orphans court; and therefrom Snively, as administrator aforesaid, appeals.

From the decree of the orphans court, the particulars of which will be found in the opinion of this court, the defendant Snively appealed.

This case was argued before all the judges.

By *Roman* for the appellant, and by *Price* and *Harbine* for the appellees.

*Roman.* We contend, that the decree of the orphans court must be reversed, on the following grounds:

1st. The real estate of R. A. Watkins was devised to the said Ellen for life only, and yet her administrator is required to charge himself with one-third of the real estate of the said R. W. Watkins, which his executors had no power to sell, and which her administrator could not, by any possibility, receive or control.

2nd. The executors of R. W. Watkins had no power to sell the claims against the canal company, below par, without the approbation of the orphans court, and the power of the orphans court to assent to a sale below par, was purely discretionary. It does not appear that that court ever assented, but it does appear the bonds have not been sold, and it is contended, that court must first assent to and order a sale, before it could require the executors to charge themselves with the value.

3rd. The court could not require the administrator of Ellen

A., to charge himself with the legacy of $200, until the execu-utors of R. W. Watkins had assented to the legacy; they should have been required first to correct their account, and distribute the said legacy.

4th. The estate of Ellen A. not being insolvent, the gold watch was not subject to sale, but was properly given to her children.

5th. The legacy of $1000 was given to the wife for her personal benefit, in reference to her personal relation to the testator, and on her death, before the contingency on which it depended occurred, it merged for the benefit of the devisee, who was also the heir at law.  6 *Gill and John.*, 507.

6th. If the inchoate possibility of that legacy vested in her, and was transmissible to her representatives, then it is con-tended, that it must be distributed to her children or their representatives, and the orphans court erred in decreeing it to be distributed to the complainants.  1 *Wms. on Exc'rs*, 757.

He gave a reference to the case of *Spence and Robins*, 6 *G. & J.*, 510.  *Talbot's Cases*, 117.

The wife, by standing to the will, becomes a purchaser.

The order distributes the $1000, as if it came to the estate of the wife after the death of the sons, and did not vest in her in her lifetime.  He referred to 1 *G. & J.*, 270.

*Price* for the appellees.

The executors of R. W. Watkins are not before the court, and it does not appear that the estate has ever been closed.

Is the legacy of $1000 a mere legacy, or a charge upon land?  The three dollars per acre on Robbin's land was not a legacy, but a purchase.

*Harbine* on the same side.

From the will of R. W. W. it will appear, that the devises to said Ellen, are as stated in the petition.  The only doubt as to the certainty of the testator's intention in any of them, that seems to be entertained by the appellant, relates to the payment of the legacy of $1000, to the representatives of

Ellen A. Watkins, she having died before the two sons, or happening of the contingency, on which the legacy depended.

The other legacies are admitted to be payable, as stated in the petition.

Ellen Watkins died intestate in the year 1846, and letters of administration were then granted upon her personal estate unto the appellant.

From these facts it appears, that the appellant became charged with the duties and powers of administrator of said Ellen. These duties require him to pay off the debts, and collect and distribute the legacies to persons entitled. In this case, then, it is his duty to collect these legacies from the executors of R. W. Watkins, and pay the same over to the parties entitled, who owe the petitioners.

We rely on the fact, that the appellant has not settled a final account, or charged himself with any of the legacies demised to Ellen by her said husband, which facts are admitted.

The appellees filed their petition on 26th of October 1850; the appellant became administrator of said intestate, deceased, in 1846, and, consequently, had more than four years in which to collect debts and pay the legacies aforesaid, which he failed to do, although the Court of Appeals, 7 *Gill and John.*, 475, say, that administrators should pay creditors in thirteen months from the date of their letters, and then distribute any surplus to distributees, according to law. And further:

The facts, that the appellant was one of the *executors* of R. W. Watkins, deceased, whose duty it was to pay over the said legacies to the administrator of said Ellen, deceased, and on the 15th day of June 1849, four months before the filing of the petition in this cause, said executors settled an account in the orphans court of Washington county, in which they show more than $2000 of assetts in their hands, which facts appear from exhibit JS, No. 1, and the will of R. W. Watkins.

Thus it appears by the solemn admission of said appellant, in exhibit JS, No. 1, *Toller on Executors*, 359, that after the payment of the debts of R. W. Watkins, there was in appellant's and his co-executor's hands, the sum of $2032, show-

ing not only that the estate of R. W. Watkins was solvent, but that a large sum was in hand to pay the specific legacies with.   With such facts in proof, it will certainly not be permitted the appellant to defend himself, on the ground that he has not yet received the several devises to said Ellen.   As an executor of R. W. Watkins, it was his duty, having the large sum of $2032 on hand, to pay the specific legacies due Ellen Watkins, to her legal representative after her death, and, as her administrator or legal representative, it was his duty to collect and distribute said legacies to those entitled. Hence, to permit the appellant to avail himself of that defence, would be to allow him to take advantage of his own neglect of duty, and his own wrong, contrary to one of the fundamental rules of evidence.

The appellant relies upon several matters of defence which we shall briefly notice *seriatim.*

He admits that he did not charge himself with the gold watch, marked "E. A. Watkins," because being satisfied of the solvency of his intestate, and said watch being part of her "parapharnalia," was not the subject of sale.

If that watch was part of her "parapharnalia," it would certainly be hers as against the creditors, devisees, or heir at law of her deceased husband.   But if the widow dies, as in the present instance, her jewelry of that description, *is the subject of sale.*   While living, it was an article fit and becoming her station in life, and therefore she was protected in its use and enjoyment.   It is true that the act of 1798, ch. 101, sub-ch. 7, says, that ornaments and jewels are not assets in the hands of an executor or administrator.   That law has only reference to a widow surviving her husband, and is not applicable to a case like the present, where the widow is dead, and we seek to charge her administrator with the value of her gold watch.   The act of 1830, ch. 17, is applicable.   It speaks of the wearing apparal of deceased persons, that is exempt from appraisement and sale, and expressly declares in the second section, that such exemption shall not extend to "watches."   The conclusive inference to be drawn, is, that

"watches" are the subject of appraisement and sale, no matter whether the estate be solvent or insolvent, for the language of the section *is unrestricted.*

Next, the appellant admits, that he has not charged himself with the legacy of two hundred dollars :

1st. Because he never received it.   This allegation should be proven.   True it is, that in equity, where a cause is heard upon bill and answer, what the answer says in avoidance as well as in response, is taken as true.   But the reason there given is, that by not *replying,* the defendant is prevented from proving his statements.   1 *Smith's Chancery Practice,* 272, *note A.*   But that reasoning, we respectfully submit, does not apply to our proceedings before the orphans court, where without a replication, parties are at liberty to take proof, upon petition and answer.   The act of 1798, ch. 101, sub-ch. 15, certainly never intended to prevent proof being taken in the orphans courts, without first filing a replication.   If the same reasoning does not apply to orphans, as to equity courts, then the same rule of law is not applicable, for *"cessante ratione cessat ipsa lex."*   *Broom's Legal Maxims,* 68.

This then, as *well as all other allegations not in response to the petition,* are to be rejected without proof, and the rule is the same as in equity upon the bill, answer and replication filed.   10 *G. & J.,* 65.   1 *Smith's Chancery Practice,* 272, *note B.*

But suppose appellant did not receive that legacy, will that exonerate him?   If he has made no endeavor to collect it, and if he has been guilty of laches in that particular, the defence ought not avail.   That he has thus been guilty of laches, is most apparent from his own exhibit, JS., No. 1, where, with a surplus of over $2200 on hand, as executor of R. W. Watkins, he failed to pay the same, as administrator of Ellen Watkins, neglected to receive the same, as so much thereof as would pay the legacy in question.

2nd.   Because it made no difference whether said legacy was paid to the administrator of Ellen Watkins, or to the administrators of the two sons, Thomas Nelson and Edgar

Augustine Watkins, as it must eventually go to the latter, they being the parties to whom the estate of the wife, Ellen, as well as of the husband, Robert W., would finally go, and therefore with the consent of all parties, and under the direction of the orphans court, the executors of R. W. Watkins, distributed the whole to the children.

In regard to said distribution being approved of and done with the consent of all parties, and under the direction of the orphans court, there is no evidence whatever.

But to say it made no difference to whom that legacy was paid, is a gross mistake. That doctrine rests upon the hypothesis, that the distributees of Ellen Watkins, and the distributees of the two sons, are the same. It is not so. Under the will of R. W. Watkins, the whole estate of the two sons goes to G. M. Watkins, upon his paying his widow Ellen $1000. He is then their legatee or distributee. But the estate of Ellen Watkins does not go to G. M. Watkins, but must be distributed to the uncles and aunts, *ex parte paterna et exparte materna* of the two deceased sons, of whom G. W. Watkins is *only one*, and the petitioners are others. Any other doctrine would assume, that the will of R. W. Watkins could control estates or moneys, that the two sons would *or might get from other persons.* As this legacy of $200 constitutes part of the estate of Ellen Watkins, we hold it to be legal and proper, that the same should be collected by, and paid over to the appellant, her administrator, and by him distributed to the two sons, or *paid to their legal* representatives *as part of the mother's estate,* and subject to the rules of distribution affecting her estate, and not the rule operating upon the estate of the two sons, which was devised to them by their father. The difference in the mode of distributing these two estates is important, for the former, with the exception of the legacy of $1000, will be given to all the uncles and aunts, while G. W. Watkins will get the whole of the latter, excepting the legacy last named. The appellant, also objects to being charged with said sum of $200 until the account settled by the executors of R. W. Watkins,

end returned with the answer, as exhibit JS., No. 1, be corrected. Why correct that account? It is mute and silent as the grave, on the subject of this legacy. For aught we know, the amount of the legacy may be retained by the said executors for appellant. Yet if the alteration need be, whose business or duty would it be to have it done? He is the legal representative of the heirs of Ellen Watkins; they cannot act without him in matters appertaining to her estate; they can give no release relating to the same, to any person but him, and it is only through him that they can reach the executors of R. W. Watkins. If, therefore, that account was wrong, or if it ought to have been altered, and it was not done, who is in fault? The representatives of Ellen Watkins can hold him responsible for the faithful performance of his trust, but surely he will not be permitted to plead, successfully, his own laches and neglect in his defence.

The appellant also admits that he has not charged himself with one-third of the proceeds of the claims against the Chesapeake and Ohio Canal Company, because the petitioners have not shewn that they were sold; nor did they show that they ever could have been sold at their par value, under the restrictions contained in the will; and appellant avers that they never were sold.

A glance at R. W. Watkin's will, shows, that it did not require these claims to be sold at their par value, but that with the approbation of the orphans court, the executors might have disposed of them at their market price. That court would, without a reasonable doubt, have given its assent to such sale, and for aught of proof that appears in this cause, the same may have been sold long since. Suppose they are not sold, and that the executors of R. W. Watkins would delay, and refuse to sell them, whose duty would it be to institute proceeding, and enforce their sale? Certainly that duty would devolve upon the legal representatives of those persons whose estates were entitled to a share of the proceeds, and one of whom is the appellant. If the executors would never sell, and the persons entitled to one-third of the pro-

ceeds coming to the estate of Ellen Watkins, would institute proceedings against her administrator for the same, could he, to the end of time escape by saying, that he had not yet received the proceeds, without showing a single effort or attempt to collect the same? Is an administrator a mere passive agent, to take money only when paid to him, but to make no effort to collect the same? On the other hand, would it not be proper, under such circumstances, to say to the appellant, it was your duty to see to this matter, and if you have neglected it, you shall be charged with one-third of the market value of these claims?

The appellant had four years and more, within which to attend to these claims, and yet, according to his answer, they are still sleeping in their quiet repose, although his duty in the capacity of both executor of R. W. Watkins, and as administrator of Ellen his wife, required action long since. If such neglect can be pleaded with effect, it amounts to a perpetual bar against claimants, and distributees.

The appellant also admits, that he has not charged himself with the legacy of $1000, because it constitutes no part of the estate of his intestate, she having died before the contingency happened, on which the estate vested in the residuary devisee, and that therefore the said legacy lapsed to the benefit of G. M. Watkins. Such is not the proper and legal construction of the will of R. W. Watkins.

The clause relating to the legacy of $1000, reads thus:

"I will and devise, in the event of the death of my two sons, Thomas Nelson and Edgar Augustine, before they are twenty-one years of age, that my brother Greenbury M. Watkins, shall have their whole estate, by paying to my wife Ellen, one thousand dollars."

The facts applicable to that clause are, that both the said sons died under twenty-one years of age, and the wife Ellen, died while the sons were yet living. That contingency, (the death of both sons under twenty-one years of age,) happening, G. M. Watkins takes their whole estate, by paying Ellen the sum of $1000. The payment of that sum, is a condition

precedent, without the performance of which, G. M. Watkins is not entitled to the estate of the two sons.

But it is objected, that as Ellen Watkins died before her two sons, her interest, or legacy of $1000 lapsed, died with her, and was not transmitted to her legal representatives. That raises this question. Is a legacy transmissible, if the legatee dies before the contingency happens upon which it is made payable? We answer in the affirmative. In *Fearne on Remainders*, 554, it is said, "an executory interest, whether in real or *personal estate*, is transmissible to the representatives of the devisee, when such devisee dies before the contingency happens." In *Williams on Executors*, vol. 1, *p.* 516, it is said, "contingent and executory interests, whether in real or *personal estate*, are transmissible to the representatives of a party dying before the contingency on which they depend, takes effect." The last named author, illustrates the text by referring to 1 *Peere Williams*, 564, the case of *Pinbury vs. Elkin*, in which case the legacy of eighty pounds, was, without directions from the testator, whether the same was to be paid out of his real or personal estate, and hence, in that particular precisely analagous to the case under consideration. The case of *Spence vs. Robins*, 6 *Gill and Johnson*, 507, in our opinion, completely settles this question. There is a marked similarity, in the circumstances and facts of that case and this. There, if Judge Robin's youngest son died without sons or daughters and their issue, his lands were to go to John Robins, on his paying the three daughters, three dollars per acre; here, if the two sons died before twenty-one years of age, their whole estate goes to G. M. Watkins, on his paying Ellen $1000. There the youngest son died without issue, and the estate went to John Robins; here the two sons died under twenty-one years of age, and their estate goes to G. M. Watkins. There one of the daughters died, before the testator's youngest son; here Ellen Watkins died, before the two sons. In both cases the payment of the legacies is resisted, upon the same ground, to wit, the death of the legatees, before the happening of the contingency, and as in that

case, the court held the legacy transmitted and vested, the same result must follow here.

It matters not, that in the case of Judge Robin's will, the legacy was charged upon land, since such high authority as *Fearne and Williams* say, it is the same, whether charged upon real or personal estate. In regard to charging himself with one-third of the estate, of R. W. Watkins, independent of claims against the Chesapeake and Ohio Canal Company, the answer of appellant is silent, and therefore we suppose that he agrees. The order of the orphans court, renders this one-third subject to a deduction, for the rent of the real estate, during the time the same was held and occupied by Ellen Watkins, which is in conformity with the meaning and intent of the will.

The prayer of the petitioners, to distribute the legacy of $1000, to the brothers and sisters of Ellen Watkins, who are her next of kin, and entitled under the statute of this State, and the one-half of the residue of her estate, to James H. and Thomas Bevans, administrators of Edgar A. Watkins, is so obviously legal and just, as to require no comment. It will be observed that the legacy of $1000, did not become fixed, *until after the death of the two sons*, Thomas Nelson and Edgar Augustine, and therefore, although Ellen died before them, it did not go to them or their heirs, but to her heirs *who were living when the contingency happened, which fixed or vested it*, and who are the petitioners, as stated. On the other hand, the residue of her estate went to her heirs living at the time of her death, to wit, the two sons Thomas Nelson and Edgar Augustine, and on their decease, must be distributed by their administrators, James H. and Thomas Beavans, being the administators on the personal estate of Edgar Augustine, to their heirs at law, who according to the statute in such case made and provided, in the present instance, are the paternal and maternal uncles and aunts.

Tuck, J., delivered the opinion of the court.

Robert W. Watkins died in the year 1845, leaving a

widow and two sons. The appellant and Greenbury M. Watkins, obtained letters testamentary on his estate. Ellen, his widow, died in 1846; Thomas, one of the sons, in 1847; and Edgar, the other, in 1849; both of them unmarried, without issue, and under the age of twenty-one. The appellant took out administration on the estates of Ellen and Thomas; and James and Thomas Beavans, two of the appellees, were appointed administrators on the estate of Edgar. The administrators of Edgar, and the brothers and sisters of Ellen filed their petition against the appellant, as administrator of Ellen, for an account, and praying that he might be required to charge himself with certain property, as part of her estate; the petition, answer and exhibits, present the questions on which we are called to pass our opinion in reviewing this *pro forma* order of the orphans court.

The order requires the appellant to charge himself with one-third of the real and personal estate of Robert W. Watkins, exclusive of his claims against the canal company, and subject to a deduction for rent of the land during the time it was in her possession. The administrator of Ellen Watkins had no concern with the real estate. In this respect, therefore, the order is erroneous; and also in charging him with one-third of the personal estate of R. W. Watkins. His duty was to administer the assetts of Ellen Watkins; that is to say, all her personal estate at the time 'of her death. According to this order, he might be charged with one-third of the estate of her late husband, although she may have received and disposed of the same in her lifetime. The order should have confined the account to the personal estate of Ellen.

It is the duty of an administrator to make return to the orphans court of all the personal property of the deceased. Mrs. Watkins was entitled, under the will of her husband, to one-third of his claims against the canal company; to a watch; to a legacy of two hundred dollars; and to another of one thousand dollars, upon the contingency therein mentioned. The petition seeks to charge the administrator with

these items. It is no answer to say (as to the canal bonds,) that they have never been sold by order of the orphans court. The will does not provide that they shall be sold, but that they shall not be sold *below par*, except by the order of the court. The appellant might have applied to the court to have these bonds sold or divided, so as to have obtained the proportion coming to his intestate. It may be that her distributees prefer to have them divided and not sold. The will directs that when sold the proceeds shall be divided between the wife and sons. But they may be sold at any time by direction of the court; and as the death of these parties has, perhaps, caused a greater necessity for a sale, the court would no doubt exercise the discretion reposed in them by the will: or divide the bonds specifically among the parties interested; and they could then be sold if deemed expedient, as part of the estates of Ellen, Thomas and Edgar.

There is nothing in the record to exempt the appellant from the legacy of $200, and the value of the watch. The latter had been delivered to Mrs. Watkins, though she had not received the former. It appears by the account and distribution of R. W. Watkin's estate, that it is sufficient for the payment of debts and legacies. The answer states that "the watch was delivered to the guardian of the two sons, not being a proper subject of sale; and that the $200, were left in R. W. Watkin's estate; it making no difference to the sons whether they received the same under the father or mother." The watch of a deceased person is made assetts by the act of 1830, chapter 17. The delivery of it to the guardian, discharges the administrator *pro tanto*, but still he must bring it into the estate. It may make no difference to the parties interested, how they receive the benefit of these legacies, but the law prescribes the channel through which the title must pass; and the distributees may insist on having the estate settled according to its requirements. If necessary, the accounts in R. W. Watkin's estate can be corrected so as to ascertain the proportions of each person claiming under his will.

The legacy of $1000, presents a question of right, in which Greenbury M. Watkins is concerned; and although he is not a party to these proceedings, we must express our opinion upon the clause of the will in relation to it, to ascertain whether the appellant has any interest in this amount or not. The will gave to Mrs. Watkins all the land he purchased of the canal company, for her life, and at her death to go to the two sons. In the event of the sons' death, without issue, before their mother, she was to have the power of disposing of all she took under the will : and the will then says, "I will and devise, in the event of the death of my sons Thomas and Edgar, before they are twenty-one years of age, that my brother Greenbury M. Watkins, shall have their whole estate, by paying to my wife Ellen, one thousand dollars." It is well settled, that an executory interest of this kind is transmissible, and will go to the representative of the legatee, if he dies before the contingency happens. 2 *Fearne on Rem.*, 529. It is a contingent interest which vests in right, though not in possession. *Barnes vs. Allen*, 1 *Bro. C. C.*, 181. 1 *Roper on Legacies*, 401, 402. But the appellant insists that this is of that class of bequests which are considered *personal* to the legatee, and therefore determine with his life ; and that it merged in the real estate for the benefit of the devisee, Mrs. Watkins having died in the lifetime of the sons. The law is said to favor the vesting of legacies, and hence to defeat a bequest of this kind, it must appear from the nature and circumstances of the case, that the time of payment was made the substance of the gift, and that the testator meant that time as the period when the legacy should vest. 1 *Jarman on Wills*, 726, 756. *Marsh vs. Wheeler*, 2 *Edwards*, 161. *Harris vs. Fly*, 7 *Paige*, 421, 6 *Gill and John.*, 512. We do not perceive anything in this will from which such an intention can be imputed to the testator. His object seems to have been to provide, not only for the widow and children, but also for the disposition of the property, on the happening of certain contingencies. In one event he gives to his brother all the property of the two sons, but on the

happening of that event, he also enlarges the interest of his wife under the will, by requiring him to pay her one thousand dollars, as the terms on which he may enjoy that part of the estate.   In the hands of his sons, the estate left to them was to be free from incumbrance, but if by reason of their death, their part should go to his brother, he makes this further provision for her out of it.   If Mrs. Watkins had survived the sons, they dying without issue, she would have taken an absolute interest in all that was left her by the will, and the property of the two sons would have gone to their uncle subject to this charge, the reason for not charging this part of his estate no longer existing.   The design of the testator was to make this additional legacy to the wife depend, not on her future condition, but on the situation, at the sons' death, of that part of the estate devised to them.   If Greenbury M. Watkins had died before the sons, his contingent interest in their estate would have passed to his representative, to be enjoyed if the contingency happened.   In 1 *Roper on Legacies*, 402, this very case is put to illustrate the vesting and transmissibility of executory bequests.   How is the case of Mrs. Watkins different from his?   Both depend on the same event.   If the sons die under twenty-one, he is to get all their estate charged with this legacy, and her right becomes perfect to the $1000, as soon as he succeeds to the property. Indeed both are gifts *in presenti*, to be enjoyed *in futuro*, upon the happening of the same contingency, at one and the same time.

It is to be remembered also, that this legacy is part of the husband's provision to his wife, in lieu of her dower; and that by abiding by the will, she becomes a purchaser for a fair consideration.   1798, ch. 101, 13, 5.   In such a case, the claim of her representative should not be defeated in the absence of a plain intent on the part of the testator to give to the bequest, the personal character imputed to it by the appellant's counsel.

The doctrine of merger relied on by the appellant's counsel, does not apply to this case.   The testator did not make

this legacy a charge on real estate alone, though in one event, his brother might take real estate subject to the incumbrance. If Mrs. Watkins had survived her sons, G. M. Watkins would have succeeded to their property, (which does not appear to have been real estate,) subject to the payment of this legacy; and she would have had a fee-simple in the land devised to her for life.   In this latter event, she taking the land, and G. M. Watkins the personalty left to the sons, the legacy of $1000 would have been payable in respect to the personal estate he would have received by the death of the sons, and because of his succession to that estate.   But if it were payable out of land alone, the case could not be distinguished from that of *Spence vs. Robbins*, 6 *Gill and John.* 510. Judge Robbins, by his will, devised his real estate to his youngest son, and therein provides, that if he should die without certain specified issue, at the time of his death the lands should go to his oldest son and his heirs, on his paying to his three sisters, three dollars per acre for the land.   The complainant married one of the sisters, who died *before* the youngest son, who afterwards died without issue, whereby the estate came to the oldest son.   The bill was filed by the surviving husband, to recover one-third of the value of the land, at three dollars per acre.   The court held that "the daughters, *on the death of the testator*, acquired such an inchoate right and interest as was transmissible to their representatives, and would not merge in the land, in case of their death, before the contingency happened."   There is no real difference between the two cases.   The contingency in one, is the death of the sons under the age of twenty-one; and in the other, the death of the first devisee without leaving certain issue.   Mrs. Spence and Mrs. Watkins, each, died before the contingency happened on which her legacy depended.   The representative of Mrs. Spence was declared to be entitled to her legacy; and so we decide in regard to that to Mrs. Watkins.   It should be collected and accounted for by the appellant as part of her estate.

The order is erroneous, however, in the distribution it

directs. The rights of Robert W. Watkins' estate, and of Thomas Watkins' estate, cannot be affected by this proceeding. The appellant is the administrator of Thomas, and one of the executors of Robert, but he is not proceeded against in these capacities. A party is liable only in the character in which he is sued. *Darnall vs. Magruder,* 6 *Gill,* 285. There is error also in allowing the brothers and sisters of Mrs. Watkins to participate in the distribution of the legacy of $1000, as her immediate representatives. The bequest vested in her lifetime, and then became transmissible. Any interest they may have in this sum, must be asserted in the character of distributees of Edgar Watkins, who survived his mother and brother; and with whose administrators the appellant must account as administrator of Mrs. Watkins, and as adminstrator of Thomas Watkins.

*Decree reversed, with costs to the appellant.*