# SALLIE S. BRIAN et al.

## vs.

# J. EDWARD TYLOR.

*Wills: intention; vesting of estates. Administration by husband: proceedings in Orphans' Court.*

The law favors the early vesting of legacies.          p. 150

Where the intention of the testator is made clear by the terms of the will, his wishes must prevail, unless in conflict with some settled principle of law.          p. 150

But where words employed are of doubtful meaning, courts, to arrive at the intention must seek the aid of settled rules of construction.          p. 150

After other and immaterial provisions, a testator by his will declared that certain trusts should cease at the death of his wife and of another tenant for life "as they shall respectively occur," and the principal sums of said trust funds, together with all interest and income which had not been paid, etc., "shall be paid by said trustees to my heirs in direct descent, to be distributed and paid to them * * * as though it were the balance of an intestate's personal estate": *Held,* that in the absence of any evidence of a contrary intention on the part of the testator, those who were his heirs at the time of his death took vested remainders, with the time of enjoyment postponed until the death of the life tenants.          p. 157

On an appeal from an auditor's account, it appeared from the record that the proceedings, directed by the Acts of 1892, Chapter 57, to be taken in the Orphans' Court by the husband of a married woman who died intestate, had not been taken, and the cause was remanded that the same might be complied with.          p. 158

*Decided June 23rd, 1916.*

146　　　　　　　　BRIAN *vs.* TYLOR.

Appeal from the Circuit Court for Talbot County. In Equity. (ADKINS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*J. Frank Turner* and *J. Kemp Bartlett*, for the appellants.

*Guion Miller*, for the appellee.

THOMAS, J., delivered the opinion of the Court.

The question presented by this appeal arises on an exception to an auditor's account filed in the Circuit Court for Talbot County, and involves the construction of one of the clauses of the will of Isaac Davis Clark of that county.

The testator gave his dwelling house and all the lands "thereto attached" to his wife, Jane F. Clark, during her life, and the will provided that at her death "they shall revert to my heirs in direct descent, as a common estate the right of each therein, to be according to existing laws regulating inheritances in this State." He also gave her all the furniture in his dwelling house, and all farming implements, cattle and crops on the premises, and provided that said "legacies" and the trust thereinafter created for her benefit were in lieu of her "dower right" in his remaining real estate and "her distributive share" of his personal estate.

He gave to Robert B. Dixon of Talbot County the sum of $80,000 and the further sum of $8,000, in trust to invest the same and to pay the net income from the $80,000 to his wife during her life, and the net income from the $8,000 to his cousin, Emily S. Maddox, during her life. The next clause of the will and the one with which we are particularly concerned is as follows: "These trusts shall cease at the death of my said wife and my said cousin as they shall respectively

occur, and the principal sums of said trust funds together with any and all interest and income which shall not have been paid to them while living shall be paid by said trustee to my heirs in direct descent, to be distributed and paid to them in the same shares as though it was the balance of an intestate's personal estate."

The testator also gave to Robert B. Dixon the sum of $25,000 "in special trust and confidence" to use the whole or any part thereof in defending any suit instituted to set aside his will or "disputing any of its provisions," and provided that said trust should continue until his estate was finally closed and distributed by his executor therein named, and that "then all of said fund in case of no suit or any balance in case of a suit with any interest that said fund may have earned shall be due and payable to my heirs in direct descent to be distributed to them as though it was the balance of an intestate's personal estate; provided however that if any such heir shall have been a party to any suit to disturb this will he, she or they shall have no share in this fund, and shall be excluded in its distribution."

The rest and residue of his estate was given to the testator's "heirs in direct descent the same to be shared according to laws existing in this State regulating inheritance and distribution." The will provided how the partition of his real estate and the distribution of the residue of his personal estate should be made; that his daughter, Sallie S. Brian, should be charged with $10,000 advanced to her at the time of her marriage, and then appointed Robert B. Dixon executor.

The will was dated February 5th, 1883, and by a codicil thereto, executed on the 17th of December, 1887, the testator revoked the bequest of $25,000 to be used in defending his will, and gave "all that portion" of his estate bequeathed and devised to his daughter, Sallie S. Brian, to Robert B. Dixon, in trust to pay the income therefrom to his said daughter during her life, and at her death, leaving a child or children surviving her, to deliver the real estate and to

pay the principal sum given him in trust for his said daughter to her child or children. The codicil contained the further provision: "But should my aforesaid daughter die without issue surviving then it is my will that all my estate real and personal by this codicil bequeathed unto Robert B. Dixon in trust for my daughter Sallie shall revert to my legal heirs then living and shall be distributed among them as by law now provided in the case of a person dying intestate."

It appears by the "agreed statement of facts" that the testator died in 1888 leaving surviving him his wife, Jane F. Clark, who died in 1895, and four children, viz: Sallie S. Brian, May Clark, Nellie B. Clark and James F. Clark, as his only heirs at law and next of kin. Sallie S. Brian, who is still living, was at the death of the testator thirty-four years of age, and had been married to James Brian for more than six years. They had no children and James Brian has since died without leaving any child or descendants. May Clark, at the death of the testator, was twenty-four years of age and unmarried. After his death she married J. Edward Tylor and died in 1896 "intestate and without issue." Nellie B. Clark after the death of the testator married Thomas W. Greenley, and she and her husband have since died leaving two children, Lenore C. Greenley, who married J. Rowland Chaffinch, and Alexander C. Greenley. James F. Clark is still living. Emily S. Maddox, cousin of the testator, died in 1915 at the age of seventy-six years. It further appears from the agreed statement of facts that the will was drawn by Charles R. Mullikin, Esq., "an ex-register of wills" of Talbot County, and that the codicil thereto is in the handwriting of Colonel James C. Mullikin, a member of the Talbot bar.

In the account to which the exception was filed the auditor distributed the legacy of $8,000: One-third thereof to Sallie S. Brian, one-third to James F. Clark and the remaining one-third to Lenore C. Chaffinch and Alexander C. Greenley, children of Nellie B. Clark, as the heirs of the testator at

the death of Emily S. Maddox, and the account was excepted to by J. Edward Tylor, the surviving husband of May Clark, on the ground that he is entitled to the one-fourth his wife would have received if she had survived Emily S. Maddox. The learned Court below sustained the exception, and this appeal is from its order directing the fund to be distributed: One-fourth to Robert B. Dixon, trustee of Sallie S. Brian; one-fourth to James F. Clark; one-fourth to the administrator of Nellie B. Greenley, and the remaining one-fourth to J. Edward Tylor.

The only objection urged to the order appealed from is to the allowance of one-fourth of the legacy to J. Edward Tylor, the contention of the appellants being that the fund should be distributed to those who were the "heirs." etc., of the testator at the time of the death of Emily S. Maddox, while the appellee contends that it goes to those who were his "heirs," etc., at the time of *his* death. In other words, the sole question raised by the respective contentions of the parties is, When did the estates in this fund bequeathed to the testator's "heirs in direct descent" vest? The answer to that question must depend upon when Isaac Davis Clark intended them to vest. Where the intention of the testator is made clear by the terms of the will his wishes must prevail unless in conflict with some settled principle of law. But where the words employed are of doubtful meaning, courts in an effort to arrive at the testator's intention must seek the aid of settled rules of construction. Here there are two periods to which the words "my heirs in direct descent" might refer, namely, the death of the testator and the death of Emily S. Maddox, and in the absence of an intention on the part of the testator, plainly expressed, to postpone the vesting of the etsates until the latter period, this Court, in accordance with the established rule of construction and in furtherance of the presumed intention of the testator, must adopt the earlier one.

In the case of *Meyer* v. *Eisler,* 29 Md. 28, CHIEF JUDGE BARTOL quotes the language of the Court in *Snively* v.

*Beavans,* 1 Md. 208: "The law is said to favor the vesting of legacies, and hence to defeat a bequest of this kind, it must appear from the nature and circumstances of the case. that the time of payment was made the substance of the gift, and that the testator meant that time as the period when the legacy should vest," and the statement of the general rule by Mr. Jarman (Vol. 1, 727), "that where a testator creates a particular estate and then goes on to dispose of the ulterior interest, expressly in an event which will determine the prior estate, the words descriptive of such event, occurring in the latter devise, will be construed as referring merely to the period of the determination of the possession or enjoyment under the prior gift, and not as designed to postpone the vesting," and then says: "The rule is, if the legatee be capable of taking, 'no mere postponement of the time of payment, will prevent his having a vested and transmissible interest.' Here there is nothing on the face of the will to indicate the intention of the testator to postpone the vesting of the estate till the happening of the event named; that is not of the substance of the gift, but points merely to the period of possession or enjoyment." In *Tayloe* v. *Mosher*, 29 Md. 443, JUDGE MILLER said: "It is very difficult, in any case, to gather the intention of the testator from the language employed in the will, where events have occurred which probably were not in his contemplation when the will was executed, and the present case is surrounded with more than usual embarrassment and doubt. The intention is certainly in every case the object of ascertainment; but, wherever there is doubt and difficulty, the Courts must resort for aid to settled rules of construction. The most important of these and indeed the only one which seems to be general, definite and fixed is that the law favors the vesting of estates, and where words of futurity are employed they are not to be regarded as importing contingency or as postponing the period of vesting, if they point merely to deferred possession or enjoyment." After referring to the argument of counsel against the vestings that the devise in that case was to trus-

tees to pay and transfer at a future period to a class of individuals "with provision that the income shall in the meantime accumulate," he said further: "But it makes no difference as to the vesting, whether the legal estate be devised to trustees who are required to convey according to the directions of the will, or whether the interest is provided to take effect without the intervention of trustees, nor that the trust provides for the accumulation of income until the period of payment or distribution arrives. These propositions are settled by numerous authorities in England, as well as by the recent decisions of this Court." In the case of *Crisp* v. *Crisp,* 61 Md. 149, the testator devised his farm to trustees, in trust that his wife should be permitted to enjoy the same and receive therefrom the rents and profits until such time as the trustees should have an offer therefor of $100,000 and directed that $50,000 of the proceeds of such sale should be invested and the income therefrom paid to his wife during her life, and that at her death the "said $50,000 * * * shall go to and become the property and estate of such person or persons as would, by the now existing laws of the State of Maryland, be entitled to take an estate in fee simple in lands by descent from me, and the heirs, executors and administrators of such person or persons *per stirpes* and not *per capita.*" All the rest and residue of his property he gave to his "legal heirs under the laws of the State of Maryland, in the same way as it would without a will; subject, however, to the dower interest and distributive share of my wife." The farm was sold for $100,000 and the widow and those who were the heirs at law of the testator at the time of his death wished to divide the $50,000 allotted to the widow between them. The Court, after stating that the only question to be decided was whether the remainder in this $50,000 vested in the heirs of Richard O. Smith (the testator) at the time of his death or at the termination of the life estate of the widow, said: "The Court of Appeals has long since announced in the broadest terms the general rule, that the law favors the vesting of estates, and that to make

an estate contingent, it must appear from the language used
and the nature of the circumstances of the case, that the time
for payment was made the substance of the gift. The estates
will be held to be vested whenever it can be fairly done with-
out doing violence to the language of the will, and to make
them contingent there must be plain expressions to that effect,
or such intent must be so plainly inferrible from the terms
used as to leave no room for construction. *Tayloe* v. *Mosher,*
29 Md. 443, adopted in *Fairfax* v. *Brown,* 60 Md. 50. If
the law thus favors the vesting of property it necessarily
favors its vesting at the earliest period. Every postponement
of vesting renders it contingent and uncertain at least as to
the person who is to take. No reason can be assigned as to
the vesting itself that will not apply to the earliest period.
In the absence of plain expressions or intent plainly inferri-
ble from the terms of the will, the earliest time for the vest-
ing will be adopted where there is more than one period men-
tioned in the will. It is a question of intention and the testa-
tor has ample power to fix the period of vesting to suit him-
self (always within the time the rule of law fixes), but he
must indicate his wish with reasonable certainty, for if he
does not the law will presume he intended the earliest time.
Tested by the above rules there can, we think, be no doubt
that the interest in the property became vested at the death
of the testator in those who were his heirs at that time. * * *
That the testator did not intend or desire for any reason per-
sonal to them to postpone or defer his living brother and his
deceased brother's children to persons that might probably
be in existence at the death of his wife, is shown conclusively,
we think, by the fact that by the residuary clause of his will,
he gives them the residue of his property. By this residuary
clause he gives the residue to 'be divided among my legal
heirs under the laws of the State of Maryland in the same
way that it would without a will.' This residue certainly
vested at the death of the testator. The legacy of $50,000
on the death of his wife was to 'go to and become the prop-
erty and estate of such persons as would by the now existing

laws of the State of Maryland be entitled to take an estate in fee simple in lands by descent from me.' There is no really substantial difference in the meaning of these two forms of expression, and as the first points with unerring certainty to an immediate vesting, we conclude that the other does also. In the clause of the will that speaks of what is to become of the farm if not sold within the eighteen years the testator also says: 'That said farm shall go to and become the property of such persons as would by the now existing laws of the State of Maryland, be entitled to take an estate in fee simple in lands by descent from me.' No persons answer this description except the heirs existing at the time of the death of the testator, for no others could take an estate by descent from him." In the case of *Mercer* v. *Safe Deposit Co.*, 91 Md. 102, the Court was construing a deed of trust from Samuel H. Mercer for the purpose of determining whether those who answered the description of his heirs at the time of his death took, at his death, a vested interest under the following provision: "If the said Samuel H. Mercer shall leave a widow at the time of his death and leave no children or descendants living at the time of his death, then the said trustees shall hold said property with the same powers in the trustees for the use and benefit of said widow during her life or widowhood, and at her death, or on her marriage again, then said trustees shall hold said property to and for the use and benefit of the right heirs of the said Samuel H. Mercer, according to the laws of the State of Maryland." The Court held that those who were the grantor's heirs at law at the time of his death, leaving a widow and no children, took vested interests in the property. After repeating what we have quoted from *Tayloe* v. *Mosher, supra*, and *Crisp* v. *Crisp, supra*, JUDGE JONES said: "Now looking to the language of the deed we are construing, we look in vain for the 'plain expressions' that 'leave no room for construction,' and indicate 'with reasonable certainty' that the earliest time for the vesting of the interest which his heirs were to take, in the contingency that has happened,

was not intended by the grantor therein." He said further: "There would seem to be no good reason for imputing to him a purpose, when limiting his property over, after the main object of his deed had been subserved, of having a care for remote and uncertain objects of his bounty, rather than of providing that the limitations should have the effect to immediately vest his property in those who were nearest to him in blood and kinship, and who would more naturally be the objects of his consideration." In the case of *Hoover* v. *Smith,* 96 Md. 393, the will in controversy contained the following provisions: "Item 1st. I devise and bequeath to my beloved wife, Elizabeth, all my property, real, personal and mixed, to have and to hold the same during her natural life, or as long as she shall continue to be my widow. After either of the above events the property to be sold and divided equally among my lawful heirs. The children of deceased heirs shall inherit the full portion as their parents would have done if living." The testator died in 1874, leaving surviving him a widow, two sons, a daughter, two grandchildren, children of a deceased daughter, and a granddaughter, Elizabeth Wolf, who died in the lifetime of the testator's widow, and the question was whether Elizabeth Wolf took, upon the death of the testator, a vested interest in his estate, which, upon her death, passed to her representatives. The Court held that she did, and in disposing of the question JUDGE BOYD said: "The law favors the early vesting of estates and 'Courts will, in the absence of plain expressions, or an intent plainly inferrible from the terms of the will, adopt the earliest time for the vesting where there is more than one period mentioned.' *Straus* v. *Rost,* 67 Md. 476. It is a well recognized rule of construction that in doubtful cases the interest shall be deemed to be vested in the first instance, rather than contingent, unless the instrument under consideration does not admit of such construction. When a testator has employed terms in his will which in their ordinary signification are in accord with such familiar and fixed rules of law, it should require very clear expressions elsewhere in

the will to justify the Court in giving such terms some other and unusual meaning. When, therefore, a testator directs that after his wife's death or marriage his property is to be sold and divided equally among his 'lawful heirs' and makes no other disposition of the remainder after his wife's death or marriage, when and in whom does such remainder vest? At common law an heir is 'he who is born or begotten in lawful wedlock and upon whom the law casts the estate in lands, tenements or hereditaments *immediately upon the death of his ancestor.*' In 15 *Ency. of Law* (2nd Ed.), 322, it is said: 'A devise to heirs, whether to one's own heirs or to the heirs of a third person, designates not only the persons who are to take, but the manner and proportion in which they are to take. Where there are no words to control the presumption, the law presumes the intention to be that they take as heirs would take by the rules of descent.' And again it is there said: 'It is well settled that a gift to the heirs of one will be construed as referring to those who are such at the time of the ancestor's death.' If then we adopt the ordinary meaning of the term used by the testator (lawful heirs), we find that he presumably intended that those who would be entitled to his real estate *at the time of his death* should get the benefit of the proceeds of the sale. It can not be successfully contended that merely because he gave his wife an estate for life, or as long as she continued to be his widow, the vesting of the estate given the heirs should be postponed until the widow's interest ceased. If he had said: 'After either of the above events the property to be sold and divided equally among those who are entitled to it by the rules of descent at the time of my death,' there could be no question about it. And when he used a term which has that meaning, in the absence of some intention expressed to the contrary, must it not be given to it? It is true that this will speaks of real and personal property and the record does not show how much there was of either, but the word 'heirs' has been held to include 'next of kin,' when used in such connection as it could be seen such was the intention."

We have quoted at length from the cases referred to because the rule applied and the reasoning of the Court seem especially applicable to the will we are now considering. Here there is not a word in the particular clause involved, or in the will to show that the testator intended to postpone the vesting of the interest of his heirs in the fund in question until the death of Emily S. Maddox. He had at the time the will was executed and at the time of his death four children, and there is nothing in the will or the circumstances of the case to warrant the inference that he preferred more "remote and uncertain objects of his bounty" to those "nearest to him on blood and kinship." Indeed, in addition to the fact that the natural meaning of the word *heirs* is those who are "such at the time of the ancestor's death," the will itself indicates that the testator, when he used the words "my heirs in direct descent" had in mind his children as the persons who would take at his death, for in the residuary clause, which makes a similar disposition of his property, he directs that $10,000 is to be deducted from Mrs. Brian's share. That he did intend his children to take at his death the estates limited in his will to his "heirs in direct descent," subject to the life estates therein provided, is further evidenced by the codicil, in which Mrs. Brian's share was left in trust for her benefit during her life, with the remainder to her children, and a limitation over, in the event of her dying without leaving children, to his "legal heirs *then living.*" The use of such appropriate terms in the codicil to express his intention to give the remainder to those who were his heirs at the death of his daughter, without children, etc., shows that he did not intend the limitation to his "heirs," etc., subject to the life estate of Emily S. Maddox, to have the same effect. It was suggested in the argument that this difference between the terms used in the codicil and those of the clause we are considering is explained by the fact that the codicil was prepared by a lawyer while the will was not. But it is reasonable to assume that Colonel Mullikin explained the provision of the codicil to the testator, and that if he had

intended the terms used in his will to have the same effect he would have had the will changed accordingly.

The appellant argues that the added words, "to be distributed and paid to them in the same shares as though it was the balance of an intestate's personal estate," show that the testator intended the distribution to be made to those who were his heirs at the time of the distribution. But the testator was disposing of personal property, and these words, we think, refer only to the shares his heirs are to take. If they have any other significance they can only mean that the fund is to be distributed to such of his descendants as would have taken it at his death if he had died intestate.

The cases cited and relied on by the appellant are readily distinguished from the case at bar. They are cases like *Demill* v. *Reid,* 71 Md. 175, where the remainder was limited upon the happening of a *contingency* to a *class,* and was held to have vested only in those answering the description *when the contingency happened;* or where a contingent remainder of inheritance was held to vest only in the heirs of the contingent remainderman in *esse* at the time the contingency happened and the estate fell into possession as in *Buck* v. *Lantz,* 49 Md. 439; *Garrison* v. *Hill,* 79 Md. 75, and *Jenkins* v. *Bonsal,* 116 Md. 629; or where the Court held that the use of the words "from and immediately after," or words of like import, plainly indicated that the testator had selected the latter period mentioned in the will as the time for the vesting of the estate, as in *Larmour* v. *Rich,* 71 Md. 369; *Poultney* v. *Tiffany,* 112 Md. 630.

In the clause here in question the remainder to Mr. Clark's "heirs in direct descent" was not made dependent upon a *contingency,* but the enjoyment of it was postponed until the death of the life tenant, and unless we are to depart from the settled rule of construction, or impute to the testator an intention not expressed in his will and contrary to the natural meaning of the terms employed, those who were his heirs at the time of *his death* took vested remainders.

It follows from what has been said that we agree with the conclusion reached by the lower Court upon the only question argued by counsel, and would affirm the decree but for the fact that at the time of Mrs. Tylor's death the Act of 1892, Chapter 571, was in force. That Act provided: "If the intestate be a married woman, and shall leave no child or children or descendants all her personal property including therein all choses in action, shall devolve upon her husband absolutely; and it shall not in such case be necessary for him to administer upon her estate in order to pass title to him, unless she shall be liable in law for debts owing by her; but no title whatever to such personal property or choses in action shall pass to the said husband when administration is not necessary except by an order of the Orphans' Court declaring the same. Upon application of the said husband the Court shall pass an order *nisi,* which shall be published in such manner and for such time as the Court in its discretion may prescribe, and which after the expiration of said notice shall be finally ratified by said Court unless cause to the contrary has been shown," etc. The record in the case does not show that proceedings were taken in accordance with the provisions quoted, so we will remand the case, without affirming or reversing the decree, in order that such proceedings may be taken, in case the provisions of the Act have not already been complied with.

*Case remanded, without affirming or reversing the decree, the costs in this Court and in the Court below to be paid by the appellants.*