JOHN WORRALL LARMOUR *vs.* FANNY K. RICH, and others.

*Construction of Deeds and Wills—Vested and Contingent remainders.*

The intention of a testator, when apparent on the face of his will must be gratified if it be lawful to do so; and the same rule is applicable to the construction of a deed.

By the will of a testator who died in the year 1847, the sum of $10,000 was placed in trust for each of his seven daughters during their respective lives, giving them the income therefrom; "and from and immediately after the decease of my said seven daughters respectively, then in trust that one of said sums of $10,000 or the stocks and property in which the same may be vested, shall descend to and become the property of their child or children respectively, his, her, or their heirs, executors, administrators, and assigns, absolutely; if more than one, as tenants in common, to be equally divided between them, share and share alike; the issue of any deceased child of my said seven daughters respectively, if any such issue there should be, to have and take the part or share the parent of such issue respectively would, if living, be entitled to; and in the event of the decease of any of the children of my said seven daughters respectively, under age and without issue, the part or share of him, her, or them so dying shall descend to his, her, or their brother or brothers, sister or sisters; and in case it shall so happen that either of my said seven daughters shall depart this life without leaving a child or children or descendants of the same living, then in trust that the part or share of the daughter or daughters so dying shall descend to and become the property of my surviving children, their heirs, executors, administrators, and assigns forever." HELD:

1st.   That the remainders given to the children of the testator's daughters were alternative contingent remainders, or contingent remainders with a double aspect, and did not vest in such children until the death of their parent.

2nd. That the death of the parent was the period fixed by the testator as the point of time at which the *corpus* of the estate should "descend to and become the property of" her children.

3rd. That as to a daughter of one of the testator's daughters, who married and died over lawful age, and without issue, in the lifetime of her mother. no remainder vested in her, and her surviving husband acquired no interest in the share to which she would have been entitled had she survived her mother.

APPEAL from the Circuit Court of Baltimore City.

The decree of the Court below, from which this appeal was taken, was passed by WRIGHT, J. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, and MCSHERRY, J.

*Daniel M. Thomas,* for the appellant.

It is apparent, on the face of both the deed and will, that the primary and dominant intent of Jacob Myers, in so far as the estate set apart for his daughter Rebecca was concerned, (the same being true also in regard to his other daughters,) was that she should have the enjoyment of it for life, and that, so far as was consistent with such enjoyment by her, the same was to be the property of her children. The gift to the children is in the most absolute form, viz., to them, their heirs, executors, administrators and assigns. The subsequent limitations over were evidently intended to provide for possible contingencies, the happening of which would defeat his primary intent.

The intent to give a vested estate to each grand-child appears not only from the general terms of the instruments, but is proclaimed with especial clearness in the limitation over of the shares of any of the children who may die "*under lawful age,* and without issue." It is impossible to assign any motive for the use of these words

"*under lawful age,*" that is consistent with the contention of the appellees, that the estate given to the children was *intended* to be contingent upon their surviving their mother.

If no estate was intended to vest in any child who did not outlive its mother, it could make no difference whether its death without issue occurred before or after attaining lawful age. If on the other hand, the estate were *vested*, it was capable of disposition by deed or will, by any child who attained lawful age ; and it can be readily understood why, if Jacob Myers *intended* each child to have a *vested* interest, this limitation over was confined to the event of its death, without issue, *before* attaining that age.

But this Court is seriously asked to ignore this plainly expressed intent, and to put a forced and unreasonable construction upon these instruments, in order to exclude the husband of Mrs. Larmour from the enjoyment of her share of the trust estates, and this on the purely fancied supposition that Jacob Myers never could have intended the husband of a deceased grand-child to get any part of his estate. This same argument was used, and with more reason, but without success, in *Meyer, et al. vs. Eisler, Trustee, et al.*, 29 *Md.*, 28.

And if any such feeling was in fact entertained by Mr. Myers, it is nowhere expressed, and none but expressed intentions can be recognized by the Court.

In several recent cases in this Court, much stress has been laid upon the *intention* in the construction of instruments like those now in question, and the duty of Courts to give effect to such intention. But the intent referred to is an *expressed*, and not an *imagined* one, and is to be gathered from the words of the instrument, and not from mere conjecture.

In *Browne vs. Lord Kenyon*, 3 *Madd.*, 410, Sir JOHN LEACH, with great force, says: "What the intention of

the testator was, must be looked for in the words of the will. Nothing more can be supposed that he intended, than what he expressed. *The expression may often be at variance with the real intention, and it may be so here, but the Court must decide on the expressed intention.*"

In the argument of this case in the Court below, the counsel for the appellees seemed to suppose that a new era of construction had been inaugurated in this Court. That the old landmarks of construction had been discarded; and that *Engel vs. The State, &c.,* 65 *Md.,* 539, and *Straus vs. Rost,* 67 *Md.,* 465, are authorities for the position, that now no estate following a life estate can be intended to vest until it vests in possession.

That these cases show no intention to disturb the existing law in regard to the vesting of estates is clearly shown by the later cases of *Albert vs. Albert,* and *Thompson vs. Ballard, et al.,* both of which seem to cover the present case from end to end.

In *Albert vs. Albert,* 68 *Md.,* 352, 363, 368, the devise was in trust for Augustus J. Albert, for life, "and from and immediately after the decease of my said son, Augustus J., then in trust that the same shall descend, and I do hereby devise and bequeath the same to all and every lawful child or children the said Augustus J. has, or may have hereafter, their heirs, executors, administrators and assigns, to be equally divided between them, share and share alike." And by a subsequent clause, there was a gift over of his share if he left no descendants. The Court in that case said, (page 368,) that if Augustus J. Albert had children, "the remainder *conditionally vested,* subject to be opened to let in after-born children."

In the case of *Thompson vs. Ballard, et al.,* 70 *Md.* 10, the form of gift to Alfred C. Thompson is almost precisely the same as the gift to Mrs. Larmour in this case. And in regard to that gift to him, the Court say: "Upon the execution of the deed of trust, Alfred Thompson took an

equitable fee simple in remainder. *It vested immedi-
ately*, although its enjoyment was postponed until the
expiration of the two preceding life estates."

The provision that the issue of any deceased child
should "take and have the part, share or proportion only
to which the parent of such issue *would if living* be en-
titled," is clearly not indicative of an intent to make the
share of such parent contingent. The words "part, share
or proportion only to which," &c., are descriptive merely,
and show that the part or share which the issue are to
take by substitution, is the same part or share originally
given to the parent; and which the parent, if living at
the death of her mother, would, herself, be entitled to
receive in possession.

The words "would if living be entitled," plainly refer
to the fact that such parent would, if living at the death
of Mrs. Miller, and not otherwise, be then entitled to
receive, *in possession*, the share to which, before such
death, she merely had an interest in expectancy. These
same words were used in the will that was construed in
*Meyer vs. Eisler*, 29 *Md.*, 28, where the gift was held to
be vested.

Under what circumstances Jacob Myers, himself, in-
tended the estates given to his daughters' children should
be divested, is expressly stated in both the deed and will,
and *expressio unius est exclusio alterius*. It is not the
province of this Court to add other grounds of defeasance
to those stated by him. Had he intended the death of
any child without issue should work a defeasance, he
would certainly have so provided; and the fact that he
did not, shows that he did not so intend.

The point made in the opinion of the Court below, that
an intent to make the interest of the remaindermen con-
tingent, is to be found in the provision, that after the
death of the life tenant, the property is *to descend to, &c.*,
and be *equally divided*, &c., is utterly annihilated by the

cases of *Meyer, et al. vs. Eisler, Trustee, et al.,* 29 *Md.,* 28; *Tayloe vs. Mosher, et al.,* 29 *Md.,* 443; *Middleton vs. Messenger,* 5 *Ves., Jr.,* 136; *Kemp, et al. vs. Bradford, et al.,* 61 *Md.,* 330; 2 *Jarman on Wills,* 455, 458; *Albert vs. Albert,* 68 *Md.,* 352, 363, 368; *Strother vs. Dutton,* 1 *De G. & J.,* 675; *Masters vs. Scales,* 13 *Beav.,* 60.

The fact that an estate is liable to be divested in whole or in part, does not make it a contingent estate. *Tayloe vs. Mosher, et al.,* 29 *Md.,* 455. In *Martin vs. Holgate,* 1 *H. L., (L. R.,)* 185, Lord CRANWORTH says: "It is a rule of construction never to construe a gift as contingent, unless the context requires us to do so."

Though there be no other gift than in the direction to pay or distribute *in futuro,* yet if such payment or distribution appear to be postponed for the convenience of the fund or property, the vesting will not be deferred until the period in question. 2 *Jarman on Wills,* 458, 459.

Where a particular estate or interest is carved out, with a gift over to the children of the person taking that interest, or the children of any other person, such gift will embrace not only the objects living at the death of the testator, but all who may subsequently come into existence before the period of distribution. 2 *Jarman on Wills,* 704, *and note* 11; *Wenmoth vs. Wenmoth, (L. R.,)* 37 *Ch. Div.,* 266; *McLachlan vs. Taitt,* 2 *De G., F. & J.,* 449.

And in cases falling within this rule, the children, if any, living at the death of the testator, take an immediately vested interest in their shares, subject to the diminution of those shares (*i. e.,* to their being divested *pro tanto,*) as the number of objects is augmented by future births during the life of the tenant for life; and consequently on the death of any of the children during the life of the tenant for life, their shares (if their interest therein is transmissible,) devolve on their respective representatives. 2 *Jarman on Wills,* 707; *Mid-*

dleton *vs. Messenger*, 5 *Vesey, Jr.*, 136; *Baldwin vs. Rogers*, 3 *De G., M. & G.*, 649; *McPherson, et al. vs. Snowden, et al.*, 19 *Md.*, 197; *Meyer, et al. vs. Eisler, Trustee, et al.*, 29 *Md.*, 28.

Nor does the provision in favor of the issue of such children of Mrs. Miller as may die leaving issue, affect the share of any child who might die, as Mrs. Larmour did, without leaving issue. 2 *Jarman on Wills*, 445; *Strother vs. Dutton*, 1 *De G. & J.* 675; *Baldwin vs. Rogers*, 1 *De G., M. & G.*, 649; *Fenby, et al. vs. Johnson*, 21 *Md.*, 117.

An estate once vested will not be divested, unless all the events which are to precede the vesting of a substituted devise happen. 2 *Jarman on Wills*, 442 ; *In re Hutchinson's Trusts*, (*L. R.*,) 21 *Ch. Div.*, 811; *Sturgess vs. Pearson*, 4 *Maddock*, 411.

The gift over on the death of all the children does not create cross remainders by implication between the children. And the rule is the same as to real and personal estate. *Fenby vs. Johnson*, 21 *Md.*, 106–117.

The Court of Appeals in this case refer with approval to the following passage from 2 *Jarman on Wills*, 482:

"If a gift is made to several persons in fee simple, as tenants in common, with a limitation over in case they all die under age, the share of one of the devisees dying during minority, will devolve upon his representatives, unless, and until the whole die under age;" and they say: "and the same rule applies to a gift of an absolute interest in personalty."

*Edward N. Rich*, and *William S. Bryan, Jr.*, for the appellees.

If Mr. Larmour had any right, it must have vested in him on the death of his wife ; if, before her death, her two sisters had died childless, and her brother had died, leaving his son living, and then Mrs. Barron had died, according to the contention of the other side, Mr. Lar-

mour would have been entitled to half of the fund, and Edward M. Barron to the other half; and yet if Edward Barron, fifteen years afterwards had died without issue on the day before he attained his majority, not only his share, but the share of Mr. Larmour as well, would be divested and go to the heirs of Mr. Myers. No reason can be suggested why Mr. Myers should have intended so extraordinary a disposition of his property, and it is with deference submitted that no one can believe that it ever entered his head that such a thing could happen. Now, is there any "stubborn rule of law" that will compel the Court to distribute the property contrary to the manifest intention of the testator? We submit there is not.

After the death of Mrs. Barron, the deed provides that if she left children or descendants living, the property should go in one way, (to them with certain limitations,) and that if she left no descendants living, that it should go in another way, (to the right heirs of Jacob Myers.) Now, it is obvious that it would be uncertain until Mrs. Barron's death actually occurred, whether or not she would leave any surviving descendants; therefore, until her death occurred it was impossible to tell if the property should devolve on the right heirs of Jacob Myers, or upon Mrs. Miller's descendants. Now, remembering that a limitation in a deed will never be held to be a shifting use when it can possibly be construed as a remainder vested or contingent, (1 *Fearne on Contingent Remainders*, 390; *Doe, Lessee of Poor vs. Considine*, 6 *Wallace*, 475; *Davis vs. Speed, Shower's Parliamentary Cases*, 104,) it follows that the trust estate was limited to Mrs. Barron for life, and after her death there was a contingent remainder with a double aspect, (*a*) if she left descendants, to them, (*b*) if she left no descendants, to the right heirs of Jacob Myers. *Buck vs. Lantz, Trustee*, 49 *Md.*, 439; *Demill vs. Reid, et al., ante, p.* 175.

Does not, there being a limitation to Mrs. Barron for life, with a *contingent* remainder after her death, demon-

strate that no interest *vested* in her children during her life? Is not that plain?

But entirely losing sight of the latter portion of this limitation, it is argued, in behalf of Mr. Larmour, that the first portion would vest the property in Mrs. Larmour in her life-time. Waiving for the moment the consideration that the whole deed must be construed together, let us see if this first portion, if standing alone, would permit Mr. Larmour to share in this fund.

Courts favor the early vesting of estates, and whenever on the face of an instrument there are two periods, at either of which the grantor or testator may have intended the remainder to vest, the Courts will give the benefit of the doubt to the earlier period. *Fairfax, et al. vs. Brown, et al.,* 60 *Md.,* 50 ; *Crisp, Trustee vs. Crisp, et al.,* 61 *Md.,* 149; *Tayloe vs. Mosher, et al.,* 29 *Md.,* 443; *Meyer vs. Eisler,* 29 *Md.,* 28.

But this is a rule of construction, merely, to be used as an aid in getting at the intention of the testator, and when that intention is manifestly in favor of the later period, it must control. And this is especially so where the gift is after a life estate. *Engel, et al. vs. State, use of Geiger,* 65 *Md.,* 544; *Straus vs. Rost,* 67 *Md.,* 465.

And in no case does the law favor the vesting of estates to the extent of defeating the testator's intention. *Bailey vs. Love,* 67 *Md.,* 603.

The cases of *Meyer vs. Eisler,* 29 *Md.,* 28, *Tayloe vs. Mosher,* 28 *Md.,* 443, *Fairfax vs. Brown,* 60 *Md.,* and *Crisp vs. Crisp,* 61 *Md.,* are relied on as showing that Mrs. Larmour had a vested interest in the property. If these cases were in conflict with the decisions in *Straus vs. Rost,* 67 *Md.,* 465, and *Engel vs. State,* 65 *Md.,* 544, as they were all decided before these latter cases, they must be taken as modified by them. But there is no conflict between them, and these cases, when properly interpreted, are in no wise adverse to the position we now

take. There is a well-known rule that where the period of enjoyment is postponed for the convenience of the estate, it will not postpone the vesting of the interest. *Spence vs. Robins,* 6 *G. & J.,* 507.

To sum up, Mrs. Barron took an equitable life estate in the trust, and after her death there was a contingent remainder. 1st. If she left no children, to the right heirs of Jacob Myers. 2nd. If she left children or descendants of deceased children, to those children and the descendants of deceased children, *per capita,* with a limitation by way of a shifting use that if any of these children or descendants of deceased children should die after receiving their share, under age and without issue, such share should divest and vest in the survivors; and if all issue and descendants of Mrs. Barron who were living at her death, should die under age and without issue, their shares should divest and vest in the right heirs of Jacob Myers. In no event is there any title to any share of this fund in Mr. Larmour.

*R. G. Keene* filed a brief for Edward M. Barron, (infant,) one of the appellees.

McSHERRY, J., delivered the opinion of the Court.

Jacob Myers executed a last will and testament on the 17th day of July, 1835. By the residuary clause he directed that all the rest and residue of his estate should be divided into ten equal parts. Three of these parts he gave to his three sons absolutely. Ten thousand dollars out of each of the remaining seven-tenths, making $70,000 altogether, he placed in trust for his seven daughters during their respective lives, giving them merely the income therefrom, "and from and immediately after the decease of my said seven daughters respectively, *then* in trust that one of said sums of $10,000, or the stocks and property in which the same

may be vested, *shall descend to and become the property of* their child or children respectively, his, her or their heirs, executors, administrators and assigns, absolutely, if more then one, as tenants in common, to be equally divided between them, share and share alike. The issue of any deceased child of my said seven daughters respectively, if any such issue there should be, *to have and take* the part or share the parent of such issue respectively would *if living* be entitled to, and in the event of the decease of any of the children of my said seven daughters respectively, under age and without issue, the part or share of him, her or them so dying shall descend to his, her or their brother or brothers, sister or sisters, and in case it shall so happen that either of my said seven daughters shall depart this life without leaving a child or children or descendants of the same *living*, then in trust that the part or share of the daughter or daughters so dying shall descend to and become the property of my surviving children, their heirs, executors, administrators and assigns forever.'' By a codicil he extended these trusts to the whole of each daughter's share of the residuum. There are other codicils, but they do not relate to the question before us. By a deed of trust dated February the 15th, 1840, he assigned to trustees certain leasehold property, reserving to himself a life estate therein. This deed provided that upon his death his daughter, Rebecca A. Miller, should, as to one moiety of the property, be permitted to take the rents and profits during her natural life, ''and from and immediately after the decease of the said Rebecca A. Miller, *then* in trust that the said undivided moiety or equal half part of and in said *ground and premises shall descend to and become the property of* the children the said Rebecca A. Miller now hath, and the child or children she may hereafter have, their executors, administrators and assigns, as tenants in common, equally, the issue of any

deceased child of the said Rebecca A. Miller, if any such issue there should be, to take and have the part, share or proportion only to which the parent of such issue would, *if living*, be entitled; and in the event of the decease of any of the children of the said Rebecca A. Miller under age and without issue, the part, share or proportion of him, her or them so dying, *shall descend to and become the* property of the survivors or survivor of them; but in case the said Rebecca A. Miller shall depart this life without leaving a child or children, or descendants of the same, *living at the time of her death,* or in case she should leave a child or children, or descendants thereof, *living at her decease,* and such child or children and descendants should subsequently depart this life under lawful age and without issue, then to the use, benefit and behoof of the right heirs of the said Jacob Myers and their assigns absolutely."

Myers died in 1847. His daughter, Mrs. Miller, had three children, Louisa K., Fanny K. and Virginia Miller by her first marriage; and one child, Albert W. Barron, by her second marriage. Mrs. Miller died December 9th, 1888, leaving her daughters Fanny K. and Virginia and a grand-son, Edward M. Barron, the son of her deceased son, Albert W. Barron, surviving her. Her daughter, Louisa K. married John Worrall Larmour in 1867, and died a few weeks afterwards, without issue, but leaving her husband surviving her. The trustees under the deed and will having all died, Rev. Arthur J. Rich was duly appointed in their stead, and now holds the entire trust estate. Upon the death of Mrs. Miller (afterwards Mrs. Barron) the trustee filed a petition asking the aid of the Circuit Court of Baltimore City in administering and settling the trust estate, and upon those proceedings the question now before us has arisen. That question, briefly stated, is, has John Worrall Larmour, by reason of his being the surviving husband of Louisa K. Miller,

any interest in the property and estate disposed of by
the clauses already quoted from the will and deed of
trust. The Circuit Court of Baltimore City held that
he had not, and from its decree this appeal has been
taken by him.

It is a perfectly familiar maxim that the intention of
a testator when apparent on the face of his will must be
gratified if it be lawful to do so. The same rule is
applicable to the construction of a deed. Obviously the
most simple and the most natural way to ascertain what
a testator's or a grantor's intention was, is to read what
he has written, because what he has written was designed
by him to express that intention. It is true there are
many other rules of construction to which resort is some-
times had. Some of these have been adopted by legis-
lative enactment and others are the outgrowth of judi-
cial decisions. But they are rarely invoked except when
the intention is obscurely or inaptly expressed. Gener-
ally speaking, they are not suffered to defeat a clearly
manifested intention ; but occasionally the intention,
though evident, is made to yield and bend to a fixed
meaning attached to particular words. If we lay aside
and put out of view for a moment these artificial rules,
and read the language of the deed and will as it would
strike the mind of one unacquainted with such rules,
there will be little, if any, difficulty in discovering with
reasonable certainty what Jacob Myers actually intended
to do. This is permissible because we are seeking to
discover what he meant, and we must, therefore, put
ourselves, as nearly as possible, in his place. We may,
for the sake of brevity, eliminate the language pertain-
ing to the trusts, as the result in this respect will be
precisely the same.

Under the deed, then, he reserved to himself a life
estate in the leasehold property. Upon the termination
of that estate he gave the rents, issues and profits of

one-half of this property to his daughter Rebecca A. Miller, during her life. From and immediately after her decease he directed that the property itself should *then* "*descend to and become the property* of the children, the said Rebecca now hath, and the child or children she may hereafter have," "the issue of any deceased child, * * * * to take and have the part" "to which the parent of such issue would *if living* be entitled." "*If living*" clearly means, if living at the time of Mrs. Miller's death. He further declared—first; that if his daughter should die without leaving a child or children, or descendants of the same *living at the time of her death,* or, secondly, that in case she should leave a child or children or descendants thereof *living at her decease,* and such child or children and descendants should subsequently depart this life under lawful age, and without issue, the property should pass to his right heirs. Certainly so long as Mrs. Miller lived, her children were to get nothing *in possession;* but upon her death the *corpus* of the estate was to "descend to" them and become their property, and the child of a deceased child was to take the share his parent would have taken had that parent survived Mrs. Miller. *Her death* was fixed by him as the point of time at which the *corpus* of the estate should "descend to and become the property of" her children. This is the obvious import of his words, apart from the subsequent contingencies in the same sentence, whereby he provided that his right heirs were to succeed to the estate in the event of those two contingencies happening. It was possible, at the date of the deed, that either of these alternative contingencies might have occurred; but it was impossible, giving to his words their ordinary and natural signification, that the estate should "descend to" or "become the property of" Mrs. Miller's children or their descendants, in any event, until *her death.* The will is substantially similar though

there is some slight difference in the two alternative contingencies, which does not, however, affect the question involved on this appeal.

Jacob Myers has, according to the plain import of these instruments, indicated with *reasonable certainty*, the time at which he wished Mrs. Miller's one-seventh of the residuum of his estate under the will, and her one-half of the leasehold property under the deed to vest in her children, to "become" their property; and that time, as he has fixed it, could never be reached during the life of his daughter, Mrs. Miller. Hence, if this intention of his is to prevail, no portion of the estate could possibly vest in any child of Mrs. Miller not living at Mrs. Miller's death.

This being so, it remains to inquire whether the intention thus manifested is in conflict with any settled principle of the law, or any paramount rule of construction. The law, it may be conceded, favors the early vesting of estates, and the Courts will, as a general rule, where there is more than one period mentioned, adopt the earlier one, if there be no expressions or no intent plainly deducible from the terms used, indicating that the testator meant to select the later and not the earlier period. Upon these principles rest the decisions in *Meyer vs. Eisler*, 29 *Md.*, 28; *Tayloe vs. Mosher, et al.*, 29 *Md.*, 443 ; *Fairfax, et al. vs. Brown, et al.*, 60 *Md.*, 50 ; *Crisp, Trustees vs. Crisp, et al.*, 61 *Md.*, 149, and others of the same class, where the estates were held to have vested upon the death of the testator. But the testator may, if he chooses, fix the period of vesting to suit himself, provided he does not transcend the time allowed by the rules of law. He may defer that period and make the vesting of the estate depend upon a contingency. When he has done this with *reasonable certainty* his wishes will prevail and the estate will not vest until the happening of that contingency. This principle under-

lies the cases of *Engel, et al. vs. State, use of Geiger,* 65 *Md.,* 544; *Straus vs. Rost,* 67 *Md.,* 465; *Bailey vs. Love,* 67 *Md.,* 603; *Mercantile Trust and Deposit Co. vs. Brown, et al., ante, page* 166; *and Demill vs. Reid, et al., ante, page* 175. These cases have been so recently decided that we need make no citations from them. They completely cover the question involved here, and are, in our opinion, decisive of it. The whole controversy resolves itself into the single inquiry, whether the equitable estates in remainder were vested or contingent remainders? And whether they were the one or the other depends largely upon what Jacob Myers intended them to be. Had no future period been fixed by him with reasonable certainty, the law itself would have treated the remainders as having vested upon the execution and delivery of the deed and the death of the testator respectively; and the case would then have been one of the class to which *Crisp vs. Crisp* and the others first cited belong. But a future period having been fixed, and the time of its occurrence having been uncertain, until the death of Mrs. Miller, the remainders were clearly alternative contingent remainders, or contingent remainders with a double aspect, as they are sometimes called; and so the case comes within the class to which those last noted belong.

These remainders never vested in Louisa K. Miller the wife of Mr. Larmour, because she died in the life-time of her mother, before the period fixed for the remainders to vest. Necessarily, therefore, her husband acquired no interest therein and the decree of the Circuit Court is, in our judgment, entirely correct and must be affirmed. Each case of this character must, in a great measure, be decided on its own peculiar circumstances. Hence other cases, where somewhat similar language has been construed and where different results were reached in accordance with the intention of the several testators as under-

stood or interpreted in the light of the facts disclosed in those cases, can not control the determination of this case. The conclusion to which we have come does not in any respect conflict with former rulings of this Court.

The costs of this appeal will be directed to be paid out of the trust estate.

*Decree affirmed.*