NICODEMUS NATIONAL BANK, Executor and
Administrator, v. ANNA C. EAKLE SNYDER

[No. 7, April Term, 1940.]

*Decided April 17th, 1940.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Ellsworth R. Roulette,* submitting on brief, for the appellants.

*C. Walter Baker,* for the appellees.

OFFUTT, J., delivered the opinion of the Court.

Elizabeth Eakle, late of Washington County, Maryland, died testate in 1901, leaving to survive her six children, John G., Louisa, Josiah, Ann C., and William H. Eakle, and Amanda Miller.

The fourth, or residuary clause of her will, dated June 22nd, 1889, reads as follows: "4th. Item. All the rest and residue of my estate I give and bequeath unto my six children, hereinafter named, and in the manner following, that is to say. I direct my Executor hereinafter named, to collect all sums of money due and owing, or belonging to me, and to sell and convey any & all real or personal property (other than the personal property mentioned in the 2nd and 3rd Items of this my will). And from the fund or estate thus converted into money, in the hands of my said executor, and remaining after the payment of debts and funeral expenses, and expenses of this trust, I direct my said Executor to distribute such said balance of my estate among my six children, John G. Eakle, Louisa Eakle, Josiah Eakle, Ann C. Eakle, William H. Eakle and Amanda Miller, share and share alike, and in the event of any of my said six children departing this life, leaving children, I direct that the share or portion that would have been distributable to such child or chil-

dren, be distributed to his child or children, that is to say to receive their deceased father or mothers share."

On August 24th, 1891, she executed a codicil to that will in which she declared that: "Whereas in the fourth item, or paragraph of my said last will and testament I empower my Executor to convert all my property real and personal into money (except certain personal property mentioned in the 2nd and 3rd paragraphs of said Will) and to distribute the same amongst my six children and whereas since the date of said will I have purchased a lot of ground on the West side of King Street in Hagerstown, Maryland, being the same that was conveyed to me by deed from C. L. Keedy and wife, and have erected a brick dwelling house thereon, wherein I now reside, which I desire to make a certain disposition of, and accordingly modify the provisions of the 4th paragraph of my said will accordingly.

"Therefore I do devise the said house and lot whereon I now reside to my daughter, Louisa Eakle for and during her life, so long as she shall remain unmarried, and upon the death or marriage, whichever shall first occur, of my said daughter Louisa, I direct my said Executor, and empower him, or if he be dead his successor in the trust to sell and convey said house and lot, and to distribute the proceeds amongst my said children or if dead their descendants, as directed and provided for in the 4th item or paragraph of my said last will and testament, disposing of the residue of my Estate.

"I further give my daughter Louisa the power to anticipate the time fixed for said sale and authorize her should she so desire, to cause said sale to be made at any time she may so desire, upon her filing her written request and assent in the proper court requesting that said sale be made, in which event my said executor, or his successor in the trust shall proceed to make such sale and complete this trust. In all other respects I confirm, and affirm my aforesaid will and testament."

In 1939 William C. Eakle, administrator d. b. n. c. t. a. of her estate, filed in the Orphans' Court of Washington

County a petition praying the court to appoint a day for a meeting of persons interested in the estate in order that it might be distributed under the direction of the court. A day was set, testimony taken, the parties in interest heard and an order of distribution passed, that order was rescinded, and then a second and final order was passed.

William Eakle died in 1920 leaving six children; Amanda Miller died leaving two children, neither the date of her death nor the whereabouts of her children appear; Josiah Eakle died in 1915 leaving eleven children; John G. Eakle died unmarried in 1918; Louisa Eakle died in 1939, unmarried; Ann C. Eakle Snyder, the remaining child, still survives.

In its first order the court directed the administrator to distribute the estate as follows; one sixth each to John G. Eakle (deceased), Louisa Eakle (deceased) and Ann C. Eakle Snyder, one sixth to the descendants of Josiah Eakle, one sixth to the descendants of William H. Eakle, and one sixth to the descendants of Amanda Miller.

Thereafter, on October 31st, 1939, Mrs. Snyder filed a petition for a rehearing, which was granted, and after that hearing the court rescinded the first order and then passed an order excluding the estates of Louisa Eakle and John G. Eakle from participating in the estate of Elizabeth. From that order the Nicodemus National Bank, executor of each of those estates, took this appeal.

The question which the appeal presents is whether Louisa Eakle and John G. Eakle took vested interests in her estate at the death of the testatrix Elizabeth Eakle.

If they did they are entitled to participation in the distribution of her estate and the order from which the appeal was taken was in error.

It is axiomatic that the law favors the early vesting of estates (*Miller, Construction of Wills,* secs. 84, 227), and that unless the language of the will manifests a contrary intent gifts in remainder vest at the death of the testator. *Ibid.* "The most important of the settled rules of construction in reference to the question as to when an estate, whether in remainder or otherwise, shall

vest, and indeed the only rule which is general, definite and fixed, is that the law favors the earliest vesting of estates." *Miller, Const. of Wills,* sec. 227, p. 631. To the same effect is the statement in *Plitt v. Peppler,* 167 Md. 252, 256, 173 A. 35, 36, that "As the law favors an early vesting of estates, and as the estate in remainder under consideration in this case was devised and bequeathed to the testator's children by name, its vesting should be referred to the time of his death rather than to the time appointed for the division of the estate, unless the will clearly indicates an intention that the remainder should not vest until the later period. *Wilson v. Pichon,* 162 Md. 200, 159 A. 766; *Martin v. Cook,* 129 Md. 195, 98 A. 489; *Cole v. Safe Deposit & Trust Co.,* 143 Md. 90, 121 A. 911; *Lee v. Waltjen,* 141 Md. 450, 119 A. 246; *Swift v. Cook,* 133 Md. 653, 105 A. 869; *Brian. v. Tylor,* 129 Md. 145, 98 A. 532; *Weller v. Kolb,* 128 Md. 221, 97 A. 542; *Miller, Construction of Wills,* p. 629." See *Grace v. Thompson,* 169 Md. 653, 659, 182 A. 573; *Miller, Construction of Wills,* sec. 231, n. 2. The true criterion of a vested remainder is said to be a present capacity to take (*Miller, Construction of Wills,* 229), and it is said in *Cox v. Handy,* 78 Md. 108, page 121, 27 A. 227, 501, quoting 1 *Preston on Estates* 70: " 'Now, when a remainder is limited to a person *in esse* and ascertained, to take effect, by words of express limitation, on the determination of the preceding particular estate, this remainder is most clearly and unquestionably vested. The person to whom the remainder is limited may, in respect of the limitation of his estate, assert a right to the possession as soon as the possession shall fall.' [1 *Preston on Estates,* 70.] In the report of decided cases we may find paraphrases and amplifications of the language in which this rule is expressed. For instance, in *Moore v. Lyons,* 25 Wend. (N. Y.) 144, in the Court of Errors, the chancellor said: 'For where a remainder is so limited as to take effect in possession, if ever, immediately upon the determination of a particular estate, which estate is to determine by an event which must unavoidably happen by the efflux of

time, the remainder vests in interest as soon as the remainderman is *in esse* and ascertained, provided nothing but his own death before the determination of the particular estate will prevent such remainder from vesting in possession,' " *Jarman on Wills,* *p. 75, although Mr. Tiffany suggests that that definition is incomplete. *Tiffany on Real Property,* p. 494.

Had the fourth clause of the will remained unrevoked, there can be no doubt that each of the testator's children would have taken absolutely a one sixth interest in her estate at her death. But after that will was made she bought land and built a home on it. Under the will that property would have been sold by her executor and the proceeds distributed equally among her children as a part of her general estate. But for some reason not disclosed by the will, the codicil, or the record, she determined that her daughter Louisa, who was unmarried, should at her election have the possession of that property as long as she lived and remained unmarried, and to effect that purpose she executed the codicil, in which she devised it to Louisa for her life so long as she remains unmarried, and at the death or marriage of Louisa the testator directed her executor to sell the property and distribute the proceeds "amongst my said children or if dead their descendants" as directed in the fourth paragraph of the will, but reserving to Louisa the power to anticipate the time of distribution by a writing addressed to the executor requesting him to sell the property and distribute the proceeds.

It has been said that no will has a twin brother, this one is no exception. When the will and the codicil are read together it is clear enough that but for the inclusion of Louisa among the remaindermen the other five children, including William, would have taken a vested interest in the testator's estate at her death.

But the nature and extent of Louisa's interest therein under the will and codicil present another and more difficult question. The apparent intent of the testator was to give Louisa more and not less than her other

children, but the awkward phrasing of the codicil makes the execution of that intent difficult. On the one hand, when the testator gave to Louisa the power to accelerate the distribution of the property, it may not reasonably be assumed that she intended that if Louisa exercised that power she would forfeit her interest in it. On the other hand, when the testator directed that the property be distributed at the death or marriage of Louisa, she knew of course that if the property remained in Louisa's possession until her death that she could not participate in the distribution. In effect the testator gave to Louisa a particular estate in the property, and then at her death she gave the remainder to her "or if dead" to her descendants. Since if distribution were made at her death, she herself could not share in it, the limitation would seem to have been to her descendants and not to her, unless she manifested a different intention.

There were three possible periods of distribution, one at Louisa's death, two, at her marriage, three, at a time to be fixed by her prior to her death or marriage. If the time of distribution had been determined by the marriage of Louisa, or at a period within her life to be fixed by her, then at the death of the testator she had a "capacity" to take (*Washburn on Real Property*, sec. 1543), but when it was to be made at her death, it cannot be said that she did have at the time of the testator's death a capacity to take, for necessarily she would not be *in esse* when distribution was made.

The particular estate might terminate in three ways, one, by Louisa's election to determine it, two, by her marriage, three, by her death, and if the remainder had been limited to any one other than Louisa, that person would apparently have taken a vested remainder at the testator's death, (*Tiffany on Real Property*, p. 481), but the limitation in remainder to the life tenant involves an apparent contradiction in terms.

But the paramount and controlling rule to be invoked to determine whether the remainder was vested or contingent is that the testator's intention must be given

effect if it can be ascertained from the will, unless it conflicts with some inflexible rule of property such as the rule in Shelley's case. *Miller Construction of Wills*, sec. 228; *Perin v. Perin*, 139 Md. 281, 115 A. 51; *Robinson v. Mitchell*, 99 Md. 50, 57 A. 625. In the two cases last cited the court considered the very question under consideration here, and decided that notwithstanding a limitation in remainder over to a life tenant at her death, she, the life tenant, also took a vested remainder. In the *Perin* case the testator provided that: "It is my will and I so devise that my said estate shall be divided equally among my surviving children and said Ella K. Perin. The children or descendants of any child shall be considered as taking its or their parent's share." Explaining that conclusion the court said: "The suggestion that the testator could not have intended to give his wife an estate expectant upon her death is not sufficient to justify a construction that would not only result in intestacy, but would necessitate reading into the will a condition not expressed." In the case of *Robinson v. Mitchell* it appeared that Mary E. Farnandis in her will provided that: "The remainder in fee after the life estate of my son James in the Homestead farm and lands herein specifically devised to him shall be held by said trustees and shall not be sold during the life of said James, but after his death the said Homestead farm and lands so specifically devised to my said son James shall be equally divided amongst my said six children." James was one of her six children, all of whom were living when she died, and in a preceding clause of her will she named each of her six children. In deciding that James took a vested interest in the property the court said: "Nor would the fact that she knew he would be dead when the time for the division arrived be a sufficient reason to justify the court in changing the terms of her will. Although she postponed the enjoyment of the possession of the remainder until after the death of her son, she gave these six children a vested remainder, and hence each of them could devise, convey, or otherwise dispose of his

interest, unless restricted by the will, and there was no such restriction attempted to be imposed on James' interest. While it may be unusual, it is by no means unheard of, for a testator to devise a life estate, and leave the remainder to a class that would include the life tenant. In discussing the rule where a devise in remainder is to the heirs of the testator or to his next of kin, it is said in 24 *Am. & Eng. Encyc. of Law* (2nd Ed.), 394: 'The fact that the devisee of this particular estate is one of several persons who, at the death of the testator, answer the description of heirs or next of kin, does not prevent the application of the rule. He would take jointly with the others a vested remainder.' "

Here the facts if possible indicate more clearly than in those cases an intention to have the life tenant share in the distribution of the estate, for in the codicil the testator directed that the proceeds of any sale of the property be divided as directed and provided for in the fourth item of her will, and in that fourth item she directed her executor to distribute the residue of her estate share and share alike among her six children, whom she named individually.

Those two cases therefore permit no other conclusion than that each of the six children, all of whom were then living, took at the testator's death a vested remainder in one sixth of the testator's property. That conclusion is strengthened by the fact that the testator made no limitation over in the event that any of the six children should die without descendants prior to the termination of the particular estate, nor is there anything in the will to indicate that she intended that the children should take as a class, or that their rights depended upon survivorship. If no child or descendants of a child survived the termination of the particular estate, if that period is accepted as the time when the estate would vest, the limitation would fail, but it may not reasonably be inferred that the testator intended any such result. *Tiffany on Real Property*, sec. 138; 23 *R. C. L.* 524, 525; *Tayloe v. Mosher*, 29 Md. 443; *Cox v. Handy*, 78 Md. 108, 123, 27

A. 227, 501; *Miller, Const. Wills*, secs. 228, 226, 227, 231; *Washburn on Real Property*, secs. 1537, 1538.

The estate of Elizabeth Eakle therefore vested in her six children at her death subject to the particular estate of Louisa Eakle, and at the death of Louisa Eakle it should have been distributed as directed by the first order of the Orphans' Court of Washington County, that is to say, the proceeds of the sale of the property possessed by the life tenant should have been divided into six parts, and one of such parts distributed to Ann C. Eakle Snyder, one to the executor of Louisa Eakle, one to the executor to John S. Eakle, one to the descendants of Josiah Eakle, one to the descendants of William H. Eakle, and one to the descendants of Amanda Miller.

And since the order from which this appeal was taken directed a different distribution, it must be reversed.

> *Order reversed and case remanded for further proceedings in accordance with the views herein expressed; the costs to be paid by the administrator d. b. n. c. t. a. of Elizabeth Eakle from her estate.*