## CONWAY ROBINSON *v.* MERCANTILE TRUST COMPANY OF BALTIMORE, TRUSTEE

[No. 5, January Term, 1942.]

*Decided February 4, 1942.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Ambler H. Moss,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellant.

*George Ross Veazy,* with whom was *Vernon Cook* on the brief, for Margaret Dorsey Pagon, Elizabeth Dorsey Polk, Jean Stockton Humrichouse and Otto V. Whitelock, appellees.

MARBURY, J., delivered the opinion of the Court.

The corporate trustee asks herein the proper construction of the will of the late Anna W. Steel. The testatrix disposed of the rest and residue of her estate, including an estate over which she had the power of testamentary appointment under the will of her mother, in the third paragraph of her will, which reads as follows: "All the rest, residue and remainder of my estate and property, of every kind whatsoever, and including the estate over which I have the power of testamentary appointment under the will of my said mother, I give, devise and bequeath to my husband, William B. Steel, for the term of his natural life and no longer, and at his death I give, devise and bequeath the same absolutely to all of my nephews and nieces (but not great nieces and great nephews), as tenants in common to be equally divided between them, share and share alike. And I request the trustees appointed by the will of my said mother to pay to my said husband, so long as he shall live, my share of the trust income from her estate."

The will of the testatrix was executed March 17, 1911. She died February 18, 1922, and the life tenant died September 25, 1940. At the time of the making of the will, and also at the time of the death of the testatrix, there were living seven nieces and nephews of the testatrix. There were also living, at the time of the making of the will, two great nieces, and subsequently another great niece was born and three great nephews. One of the great nieces living at the time of the making of the will died before the death of the testatrix. The other five survived her.

At the death of the life tenant five of the nephews and nieces were living. One nephew had died testate, neaving a widow who is his executrix and sole legatee, but no descendants. One niece had died intestate, leaving a surviving husband who is her administrator, and three children. The question involved is whether the remainders created by the will vested as of the date of the death of the testatrix, or whether the vesting was

postponed until the death of the life tenant. In the former case, the estate would be divided into seven parts, the executrix of the deceased nephew and the administrator of the deceased niece each receiving a part. In the latter case, the estate would be divided into five parts which would go to the four nieces and one nephew who survived the life tenant.

In the construction of a will, the whole effort is to ascertain the intention of the testator. Unless that intention conflicts with some positive or fixed policy of law, or some statute, it will be given the fullest possible effect. In ascertaining such intention, not only the actual words used in the will, but also the situation of the testator and his relations with the parties to whom he has devised or bequeathed his property are important elements. This rule is well expressed in the case of *Henderson v. Henderson,* 64 Md. 185, 1 A. 72, 73, in which this court said: "The peculiar situation of this testatrix, and the relations subsisting between her and the recipients of her bounty must therefore be considered in connection with the language of the document itself, in order that we may be fully enlightened in regard to the real motives and intent by which she was controlled in the execution of this will."

The gift in remainder in the present case is not to parties who are mentioned by name. It is given to those who come within a description. It is therefore what is known as a gift to a class, and the precise question before us is whether that class opened at the death of the testatrix, or whether it opened at the time of possession, which, of course, was at the death of the life tenant. To put the question in another form, did the remainders to the nieces and nephews of the testatrix vest at the time of her death, or were they contingent upon the survival of the life tenant by the members of that class?

The court below reached the conclusion, from the language of the will, that the intention of the testatrix was that the remainders should not vest until the death of the life tenant. He based that conclusion upon two

statements in the will. One of these was that the testatrix used two sets of verbs, as he said, or as it might be more correctly stated, she used the words, "I give, devise and bequeath" twice, the first time before the gift to the life tenant, and the second time before the gift of the remainder. The other point was that the testatrix expressly excluded from her bequest the great nieces or great nephews, and the effect of vesting the remainders at her death, would be that some of the great nieces and nephews would take, as heirs of their parents when the estate came to be divided at the death of the life tenant.

There are other expressions in the will which might indicate a different intention. The testatrix gave the remainders to "all my nieces and nephews." This could be held to show that she did not want the gift to any of them to fail by reason of their deaths before the life tenant. She stated that her nephews and nieces were to take the remainder, " as tenants in common, to be equally divided between them, share and share alike." That clause negatives the principle of survivorship, which is the effect of postponing the vesting until the death of the life tenant.

It does not appear that the testatrix had any dislike of any of her great nieces and nephews, or that she had any particular reason for trying to prevent them from getting any of the property she was disposing of. She made it amply clear that the original division was only to include nieces and nephews, and not great nieces and nephews, but that might readily be construed as an effort to define precisely the class of peopple whom she desired to take, and the number of parts into which she desired her estate to be ultimately divided. It would unduly stretch her words to assume that she did not want any of her great nieces and nephews to inherit their parents' share at the death of their parents. She did not attempt to prevent the children of those who survived the life tenant from inheriting, although she might have done so. There is no reason to suppose that she wished to

prevent the children of those who died before the life tenant from being in the same position as the children of those who survived him.

On the whole, we are unable to say that the testatrix, by the terms of her will, expressly indicated that the vesting of the remainders which she left should be deferred until the death of the life tenant.

In the absence of any express statement to the contrary, remainders will be held to vest at the earliest possible moment. This rule of construction is based upon three reasons. The first is that testators usually have in mind the actual ownership of property by those to whom it is given, and are not concerned with technical distinctions which postpone such ownership. The second is that it is for the benefit of the public, generally, that titles should be vested, and should not depend upon future contingencies. The third is that a contingency may not happen, thereby a partial intestacy may ensue, and one who takes the trouble to make a will is supposed to desire to dispose of his entire estate by that instrument. The rule is not, however, to be substituted for the intention of the testator if the latter can be ascertained from the instrument. It is to be invoked only to aid that intention, and not to defeat it. It has its greatest application in those cases where there is doubt and difficulty, and the intention of the testator cannot be ascertained with reasonable certainty from the will itself. *Grace v. Thompson,* 169 Md. 653, 182 A. 573, 103 *A. L. R.* 589.

An examination of the cases decided by this court will show that the rules of construction above discussed have been universally applied in the determination of questions similar to that before us. The will is first examined to determine whether it indicates definitely when the remainder vests. The use of certain words has in some cases been held to indicate a later vesting, but in other cases, the effect of these or similar words has been minimized by other expressions or by circumstances surrounding the testator. The inquiry is the same in every case.

That is, did the testator indicate by the words he used and under the circumstances in which he used them, that the gifts in remainder he left take effect at some future time. The answer depends upon the different expressions used, and the different circumstances surrounding their use. The rule is the same; the inquiry is the same; only the answer differs.

If the will does not clearly indicate a later vesting, then the remainder vests immediately upon the death of the testator. This applies whether the remainder is to a designated person, or whether the remainder is to an unnamed but ascertainable class of persons.

The cases are numerous, and no good purpose would now be served by discussing them in detail. Many of the earlier cases were analyzed by this court, speaking through Judge Urner, in the case of *Lee v. Waltjen,* 141 Md. 450, 119 A. 246. In the later case of *Wilson v. Pichon,* 162 Md. 199, 159 A. 766, this court, speaking through Judge Sloan, made an even more elaborate analysis, showing that in every case where there was not some wording in the will or some surrounding circumstances pointing definitely to a postponement, remainders had always been held vested at the death of the testator. In the latest case before this court, *Nicodemus National Bank v. Snyder,* 178 Md. 140, 12 A. 2d 518, this court again reiterated the rule, and cited several cases decided after *Wilson v. Pichon, supra,* which followed the same construction.

Counsel for four of the five living nieces and nephews urged upon us the fact that the will was witnessed by Mr. John B. Deming, a well known and careful lawyer, of the Baltimore Bar, and that this indicated that he was the draftsman. It was further stressed that at the time this will was drawn, two cases had recently been decided by this court, of which the draftsman must have known. These two cases, *Poultney v. Tiffany,* 112 Md. 630, 77 A. 117, and *Schapiro v. Howard,* 113 Md. 360, 78 A. 58, 140 *Am. St. Rep.* 414, both held that the estates in remainder with which they were concerned vested at

the death of the life tenant. It is sought to be inferred from this that some of the expressions in the will before us were placed there with the intention of following these decisions.

Apart from the fact that this is inference upon inference, upon inference it seems probable that had the draftsman endeavored to follow these two cases, he would have used the words which were held controlling in those cases. His failure to do so indicates that he did not intend the Steel will to be construted as were the wills in those two cases. Thus, in the case of *Poultney v. Tiffany* the case was decided largely upon the use of the word "then" after the bequest to the life tenant, and the court relied upon the construction of that word given in the case of *Larmour v. Rich,* 71 Md. 369, 18 A. 702. Yet, nowhere in the will before us do we find the word "then" used. Its omission is as significant as its inclusion would be. In *Schapiro v. Howard,* the case was decided upon the fact that the contingency upon which the remainder was limited was the death of the wife of the testator dying without issue living, and that contingency could not be determined until the death of the life tenant. In the case before us, no such limitation was intended by the testatrix, but that could have been inserted in her will appropriate words indicating without any doubt that those only of her nieces and nephews were to take who were living at the date of the death of the life tenant. Instead of this, the bequest was to "all" of her nieces and nephews without qualification.

It is also contended that the case of *Stahl v. Emery,* 147 Md. 123, 127 A. 760, 761, supports the decision of the court below. The opinion in that case was written by Judge Offutt, and the question before the court was whether the descendants of the two children who had died during the life time of the testator should share with two children who survived him, in an estate which was "to be equally divided among our children, share and share alike," after the death of the life tenant. The court, in an elaborate opinion, discussed this ques-

tion and decided that this clause created a gift to a class, and as there were persons living who corresponded to the description of that class, they and they alone could take. It is true that the court did say that since the legacy was to a class and there were in being "at the death of the life tenant members of the class," they should take. But in that case it made no practical difference whether the parties who were given the remainder were those in being at the death of the testator, or were those in being at the death of the life tenant, the recipients being the same by either construction. There is nothing in the body of the opinion which leads to the conclusion that the court intended that the rule, previously universally held, would be changed. It is perhaps significant that in at least two later cases in which the opinion of this court was delivered by Judge Offutt, he discussed with approval of the early vesting rule, and gave it its full application. These cases are *Grace v. Thompson*, 169 Md. 653, 182 A. 573, 103 *A. L. R.* 589, and *Nicodemus National Bank v. Snyder*, 178 Md. 140, 12 A. 2d 518.

As we have already said, we are unable to find in the language of the testatrix any indication of a prejudice against her great nephews and great nieces. In that respect it is entirely different from the case of *Union & New Haven Trust Co. v. Ackerman*, 114 Conn. 152, 158 A. 224, cited by counsel for the appellees, in which there was a definite exception from the class to whom the testator left the remainder of his estate, of one niece, to whom one dollar was given.

Nor do we see anything in this will which authorizes the use of the "pay and divide" rule said to be approved in the case of *Reilly v. Bristow*, 105 Md. 326, 333, 66 A. 262, 265. In that case this court said: "It is unnecessary to refer to the numerous authorities in Maryland that remainders will be held to vest at the death of the testator whenever it can be fairly done without doing violence to the language of the will, and that to make them contingent there must be plain expressions to that

effect, or such intent must be plainly inferable from the terms used. All of these cases, however, distinctly recognize that whether the remainder is vested or contingent depends entirely upon the testator's intention, and that where he has indicated with reasonable certainty his intention that it shall not vest until a particular time, it will not vest until that time arrives, and then only in those who are in *esse*, and capable of taking at that time." The use of the word "then" was held to be conspicuous and significant, and the vesting was held suspended because of its use. The cases from other jurisdictions applying the "pay and divide" rule, which were discussed in that opinion, were said to be unnecessary for the decision. The "pay and divide" rule is, in effect, that where the only gift is in the direction to pay, then the gift is held to vest as of the time of the actual payment or distribution. The gift here, however, is by a specific use of the words "I give, devise and bequeath," followed later by the direction that the estate is "to be equally divided between them, share and share alike." Were we disposed to apply to "pay and divide" rule, this would not be an appropriate case for its exercise.

The result of holding the remainders in this case vested at the death of the testatrix may be that great nephews and great nieces, or strangers to the blood of the testatrix, will take shares in the estate. They will not, however, take as legatees of the testatrix, but in the case of one share as heirs of their parent, and in the case of another share as legatee under the will of one of the original legatees. That situation is discussed in the case of *Swift v. Cook,* 133 Md. 651, 105 A. 869. It could not be assumed that the testatrix desired to prevent, for all time, the use of any of her property by her great nephews and nieces, unless she expressed that intention in the clearest possible way by creating an estate in which there would be nothing left to the nieces and nephews which could be inherited by their children, or which the nieces and nephews could bequeath to their children. To hold that the testatrix had such intention would impute

to her a special animadversion or dislike towards the children of her nieces and nephews. There is no suggestion of such feeling. On the contrary, to one of the great nieces living at the time of the making of the will, the testatrix, by another clause, bequeathed her diamond ring, and this was the only piece of jewelry specifically given to anyone, other than the husband of the testatrix who was the life tenant. To give any such construction to the words of the testatrix would also, as we have pointed out, create a clear distinction between the children of those nieces and nephews who survived the life tenant and the children of those who did not. The testatrix had no means of knowing which of the seven would survive her husband, and she could not, therefore, have intended to prefer one set of great nephews or nieces and permit them to inherit from their parents, and discriminate against another set, and deprive them altogether of their parents' portion in her estate.

It is our conclusion that the remainders under the will of Mrs. Steel vested upon her death, and that her estate should now be distributed to the four living nieces and the living nephew, and to Louisa L. Whitelock, executrix of William M. E. Whitelock, deceased nephew, and to Conway Robinson, administrator of Jane D. Robinson, a deceased niece, share and share alike. The decree will be reversed and the case remanded for the passage of a decree in accordance herewith.

> *Decree reversed and case remanded for further proceedings in accordance with this opinion, the costs to be paid out of the estate.*